432 P.2d 428

**STATE of Arizona, Appellee,**

v.

**Frank COTA, Appellant.**

**No. 1603.**

Supreme Court of Arizona.

In Banc.

Oct. 19, 1967.

Rehearing Denied Nov. 21, 1967.

Darrell F. Smith, Atty. Gen., Philip M. Haggerty, Sp. Counsel to the Atty. Gen., and Robert K. Corbin, County Atty., Maricopa County, for appellee State of Arizona.

Lawrence C. Cantor and Theodore Matz, Phoenix, for appellant.

Robert J. Corcoran, Phoenix, Counsel Arizona Civil Liberties Union; amicus curiae.

UDALL, Justice:

The appellant, Frank Encisco Cota, hereinafter referred to as defendant, was charged by information with first degree murder in the death of a state narcotics agent, Roy Singh. One Pedro Flores Valenzuela was a co-defendant. A first trial of the defendant and Valenzuela resulted in a mistrial.

After the second trial had commenced, Valenzuela pled guilty and the trial continued as to defendant. The defendant was subsequently convicted of murder in the first degree and sentenced to the death penalty. On appeal the conviction was reversed.

Defendant on retrial was reconvicted and the penalty was set at life-imprisonment. From this conviction the defendant appeals, having used as a basis therefor numerous assignments of error.

Of the assignments of error the ones which necessitated our consideration were related to the basic defense contention that the calling of Valenzuela as a prosecution witness in the defendant's trial with the knowledge of Valenzuela's intention to invoke the privilege against self-incrimination when no valid probative value would be received thereby and, while such action would have a tremendously derogatory effect on the case for the defense, was reversible error in the context of this cause. With this contention we take exception.

The defense theory is as follows: that in his opening argument the County Attorney frequently mentioned Valenzuela by name and makes reference to three conversations between the defendant and Valenzuela. Throughout the prosecution's case Valenzuela and defendant are joined. The jury was told that defendant and Valenzuela went out with the deceased liquor agent the night of the latter's death, and that Valenzuela and the defendant were seen later that night after the disappearance of the liquor agent. Therefore it is contended that at this point the defendant and Valenzuela had been inextricably associated. Thus the defense argues, when Valenzuela was called as a witness and refused to testify both Valenzuela and Cota would appear guilty to the jury.

The facts show that on taking the witness stand Valenzuela answered several preliminary questions. Then in answer to a number of questions relating to his activities on the night of the narcotics agent's death Valenzuela invoked the Fifth Amendment privilege against self-incrimination. In answer to questions concerning those persons with whom the defendant and Valenzuela were alleged to have kept company on the night of the agent's death Valenzuela invoked the Fifth Amendment. To the questions concerning his residence in Phoenix, the place of the agent's death, during May of 1963, the time of the agent's death, Valenzuela refused to answer on the Fifth Amendment ground as he did when questioned as to his acquaintance with the defendant. With the court sustaining Valenzuela's claim of privilege to this line of questioning, the prosecution then dispensed with any further questions.

The counsel for the defense first objected to the calling of Valenzuela when a hearing in the court's chambers disclosed the prosecutor's intention concerning Valenzuela. Defense counsel then renewed his objection in open court. At the conclusion of Valenzuela's testimony the defense moved for a mistrial, for the reason that the presentation in front of the jury in open court of the former co-defendant, Valenzuela, served only to prejudice the defendant's case rather than to present any probative matter. The trial court declined to sustain the defense objections or to grant the motion for mistrial.

In closing argument the prosecution made the following remarks:

"In the upstairs apartment, there was LeRoy Pino, Frank Cota, Pedro Valenzuela and Roy Singh, the undercover narcotics agent. Roy Singh left the room. He went to another room, an adjoining room. At which time, Cota pointed to Valenzuela and said, 'There is that rat.'"

"Pino then goes downstairs. A few minutes later who comes downstairs, Ladies and Gentlemen, but the defendant, Frank Cota, Pedro Valenzuela, *who refused to testify,* and who else but the person whose picture you saw and who has been identified as Roy Singh, the undercover state narcotics agent." [Emphasis supplied]

The defense contends that the basic error of calling Valenzuela was further aggravated when combined with the prosecution's comment on the failure of Valenzuela to testify. Such is the defense contention because this allegedly wrongful combination used the circumstance of Valenzuela's re-

**418**

fusal as an incriminating fact against the defendant; which argument the defense was unable to rebut since Valenzuela could not be cross-examined to bring out a theory contrary to the inference of a jointly committed crime.

Initially we must state that we feel the law to be that there is no error in calling as a witness a person, involved in the offense with which the accused is charged, who claims his privilege against self-incrimination when there is no obvious reason for his invoking the privilege against self-incrimination and when there was no basis for anticipating a refusal to testify. United States v. Cioffi, 2 Cir., 242 F.2d 473, cert. den. 353 U.S. 975, 77 S.Ct. 1060, 1 L.Ed.2d 1137. See also United States v. Romero, 2 Cir., 249 F.2d 371. In this case however the defense argues that a distinction should be made since the prosecutor was aware of the intention of the witness to invoke the privilege of self-incrimination; and that here, with knowledge gained in a hearing in chambers, that the witness would invoke the Fifth Amendment, and the court would sustain the claim of privilege, the prosecution called the witness only to elicit the witness' claim of privilege.

There are a number of cases which we feel deserve consideration in determining the propriety of the prosecution's acts and the court's orders concerning the calling of Valenzuela as a witness.

An early California case, People v. Plyler, 121 Cal. 160, 53 P. 553, found that it was not, despite the prejudice to the defendant, error for the prosecution to call as a witness one who was awaiting trial on the same offense although that witness refused to testify on the basis of a claim of the Fifth Amendment and even though there was no reasonable basis for believing that the witness would waive his constitutional rights.

The Supreme Court of Iowa went even further in State v. Snyder, 244 Iowa 1244, 59 N.W.2d 223, where it reasoned that immunity is a personal privilege of the witness and may not be urged by the party against whom the witness is offered. While a witness may refuse to give incriminating testimony, if properly summoned, he must appear and be sworn. The privilege is available to him when he is a witness, and does not excuse him from appearing. Thus if a witness cannot escape appearing and taking the oath by claiming in advance that he will refuse to testify, the party against whom the testimony is offered cannot claim greater rights.

Other states have taken a contrary view to the above cited cases. In Johnson v. State, 158 Tex.Cr.R. 6, 252 S.W.2d 462, concerning their applicable state law, the Texas Court of Criminal Appeals stated that,

"The action of the court, in permitting the state to call a co-defendant to the stand and require him to claim his privilege against self-incrimination after being informed that the witness would decline to answer if so called, has been held to constitute reversible error."

An even more outstanding Texas case is that of Washburn v. State, 164 Tex.Cr.R. 448, 299 S.W.2d 706, wherein the Texas court found that the calling of a codefendant, under indictment as an accomplice of the accused, requiring him to claim the privilege against self-incrimination in the presence of the jury constituted reversible error under the facts of that case because such refusal could be used as an incriminating fact against the defendant.

DeGesualdo v. People, 147 Colo. 426, 364 P.2d 374, 86 A.L.R.2d 1435, found reversible error in the calling of an alleged accomplice for the purpose of extracting a claim of privilege, the lower court having taken no steps to prevent such and not having given the jury a cautionary instruction to disregard the incident. Therein the court said,

"* * * the question is whether the district attorney can call as a witness an accomplice or co-conspirator (where the accused is charged with conspiracy) in the hope that the accomplice will have suffered a change of heart, or in the al-

ternative so as to get before the jury the fact that he, as least considers that his testimony would be incriminating to him, the accomplice. The effect of such a device is clear. The jury is told of the whereabouts of the missing defendant and is also told that he at least considers it impossible to testify without incriminating himself. Does such a scene create prejudice in the minds of the jury?"

The Colorado Supreme Court in answer to its own question found that the case for the defense was improperly prejudiced. See also, Commonwealth v. Granito, 326 Mass. 494, 95 N.E.2d 539; Rice v. State, 121 Tex. Cr.R. 68, 51 S.W.2d 364; Rice v. State, 123 Tex.Cr.R. 326, 59 S.W.2d 119; McClure v. State, 95 Tex.Cr.R. 53, 251 S.W. 1099; Garland v. State, 51 Tex.Cr.R. 643, 104 S.W. 898.

The U. S. Court of Appeals in United States v. Hiss, 2 Cir., 185 F.2d 822, cert. denied 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683, found no commission of reversible error by the prosecution in calling two persons as witnesses, who had been involved with the accused in crimes other than those for which he was on trial, when said witnesses refused to testify on the ground of privilege against self-incrimination. The court there said that a finding of reversible error on this issue would require a showing of "a successful effort to influence the jury against a defendant by some means clearly indefensible as a matter of law" at page 832.

The court therein also stated, in quoting from an earlier federal case, United States v. Five Cases, 2 Cir., 179 F.2d 519, 523, that:

" * * * we are not prepared to say that it would not be a ground for reversal if the party who called a witness connected with a challenged transaction knew, or had reasonable cause to know, before putting the witness on the stand that he would claim his privilege." 185 F.2d at 832.

The Seventh Circuit of the U. S. Court of Appeals in United States v. Amadio, 7 Cir., 215 F.2d 605, while finding that the lower court's cautionary instruction partially erased the effect of the error of allowing the prosecution to call witnesses with the knowledge of their intention to invoke a claim of privilege and that reversible error was thereby avoided, made the following statement:

"We think it is clear that the government knew before these two witnesses were called to testify that they intended to refuse to answer the questions deemed by the government to be pertinent to the case on trial, on the ground of their constitutional privilege against self-incrimination. In view of that fact it was improper for the government to attempt to force them to testify." 215 F.2d at page 613.

The next prominent federal case in this area is United States v. Gernie, 2 Cir., 252 F.2d 664, cert. denied 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073, rehearing denied 357 U.S. 944, 78 S.Ct. 1383, 2 L.Ed.2d 1558. Certain language therein has been relied on by the state in the instant matter, as sustaining their position that no reversible error was involved in the instant case. Hence the state contends that the following language is applicable here:

"The government had a right to call Harell to testify. The testimony * * * was material and relevant to the case. Had the government not produced him the defense could have argued that its failure to call him showed that he would not corroborate the testimony of the agents. Under such circumstances it makes no difference whether the government has reason to believe that the witness will refuse to testify. It has a right to produce the witness and thus show the jury that it is bringing forward such witnesses as may have knowledge bearing on the case." 252 F.2d at page 669.

A more recent federal case, United States v. Maloney, 2 Cir., 262 F.2d 535, is more closely related to the facts of the instant matter. Therein the prosecution called to the stand witnesses who refused to give testimony on the basis of their privilege

against self-incrimination when questioned as to their relationship with the defendant and crimes with which the defendant had been charged. The court there determined that the calling by the prosecution of such witnesses with the knowledge that the witnesses would refuse to testify and the use of such refusal as corroboration of the state's case constituted reversible error in absence of a cautionary instruction by the court to disregard such refusal as evidence, even though the defense made no request for such instruction.

Another noteworthy case, United States v. Tucker, 3 Cir., 267 F.2d 212, though reversing on other grounds stated that,

"In our view an interrogating official himself gravely abuses the privilege against self incrimination when, believing a truthful answer will incriminate a witness, he nevertheless insists on asking the incriminating question with a view to eliciting a claim of privilege and thereby creating prejudice against the witness or some other party concerned." 267 F.2d at page 215.

Such is the basis of the defense claim herein.

This court has said that a defendant is not entitled to have a witness' testimony that tends to incriminate the witness and defendant excluded on the ground that it violates the witness' constitutional immunity against self-incriminating evidence, since the privilege against self-incrimination is personal to the witness. State v. Cassady, 67 Ariz. 48, 190 P.2d 501.

■ We take the basic principle at issue here to be whether a defendant should be allowed to have any control over a witness' privilege against self-incrimination. We have concluded that this privilege is for the benefit of the party claiming it and not some third person. See State v. Addington, 158 Kan. 276, 147 P.2d 367. Further we feel bound by the principle that this privilege belongs exclusively to the witness and cannot be taken advantage of by the defendant. See State v. Britton, 27 Wash.2d 336, 178 P.2d 341.

While we do not state here that a case cannot contain such improper behavior on the part of the prosecution in relation to a witness' claim of privilege as to deprive a defendant of a fair trial, we do not feel that the jury herein was improperly influenced by the calling of Valenzuela. The testimony of other witnesses supported the state's theory of a crime jointly perpetrated by Valenzuela and the defendant. In fact the pleadings offered by Valenzuela in support of his own case showed that the prosecutor's repeated references jointly to Valenzuela and the defendant could have been justified had Valenzuela given only as much testimony concerning the alleged crime as he had sworn to in his motion to withdraw plea. Valenzuela, in support of a motion to withdraw a plea of guilty, swore to the validity of his attorney's statement of the facts relating to the night of the alleged murder. This statement reads in relevant part:

"The defendant Valenzuela now states that he changed his plea because of fear for himself and his family and because of his greatly agitated and disturbed state of mind at the time. He states that he truly did not commit the murder, that in fact the defendant Cota committed it, without any intent to kill on the part of the defendant Valenzuela.

"While the defendant Valenzuela has made statements wholly contradictory to each other, the other evidence in the case would indicate that in truth Valenzuela was present at the scene of the killing but did not commit the killing and did not intend it. For example, there is evidence that the ripple-soled shoes admittedly owned by Valenzuela, left distinct foot prints at the scene of the crime, however, the clothing of the defendant Valenzuela which was recovered by the police was virtually free of any bloodstains, strongly indicating that he could not have stabbed the victim for more than twenty times without himself being heavily blood stained. There is also the testimony of Leroy Pino who stated that on the day of the

killing the defendant Cota stated that he had stabbed a rat and that the defendant Valenzuela had thereafter become highly angry and stated 'go ahead and tell what a big man you are, stabbing a man in the back.'"

 The prosecutor did, as the defense points out, repeatedly refer to Valenzuela throughout the trial; further the defendant and Valenzuela were frequently joined so as to be thought of together. However the prosecution went on to show, by testimony, that the defendant and Valenzuela were together with the victim of this crime shortly before the latter's death. Thus to deprive the state of such argument by disallowing the calling and mention of Valenzuela would have in effect disallowed the state's theory of the case—that defendant and Valenzuela together perpetrated the crime of murder.

For the state to have presented its theory without calling Valenzuela would have meant leaving an obvious step out of its argument. Then the defense could have argued that the state's failure to produce the alleged accomplice meant that no corroboration for its theory would have come from such testimony. United States v. Gernie, supra.

 There could have been no testimony more material to the prosecution of this case than that of Valenzuela. Further, since the privilege against self-incrimination is a personal immunity for the witness and does not disqualify him from being called, we cannot conclude otherwise but that, regardless of its reason to believe that Valenzuela would choose to invoke the privilege against self-incrimination, the state had the right to show that it was presenting all the relevant evidence at its disposal in order to prove its theory of the case.

 As to the prosecution's comment on Valenzuela's failure to testify, while we cannot say that such is desirable or even proper behavior, on the other hand we do not feel that recalling this fact to the jury's attention could cause such prejudice to an otherwise fair trial as to necessitate a reversal.

We find further that the other issues raised by the defense are either devoid of merit or fail to be substantiated by the record and thus need not be discussed herein.

For the foregoing reasons, the judgment and sentence of the court below are affirmed.

BERNSTEIN, C. J., McFARLAND, Vice C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.