Frank E. COTA, Petitioner,

v.

STATE OF ARIZONA, etc., et al.,
Respondents.

No. Civ–69–266.

United States District Court
D. Arizona.

Oct. 9, 1969.

Lawrence C. Cantor, Phoenix, Ariz., for petitioner.

Gary K. Nelson, Atty. Gen., State of Arizona, Phoenix, Ariz., for respondents.

## ORDER

CRAIG, District Judge.

The petitioner, Frank E. Cota, was charged by information with first degree murder in the death of a state narcotics agent, one Roy Singh. Pedro Flores Valenzuela was charged in that same information as a codefendent. The first trial of petitioner and Valenzuela resulted in a mistrial. After a second trial had commenced, Valenzuela pled guilty and the trial continued as to petitioner. The petitioner was thereupon convicted of murder in the first degree and sentenced to the death penalty. On appeal the conviction was reversed. Petitioner on retrial was again convicted and sentenced to life imprisonment. He appealed this conviction to the Arizona Supreme Court, whereupon it was affirmed. State v. Cota, 102 Ariz. 416, 432 P.2d 428 (1967).

Petitioner is now before this Court on a petition for writ of habeas corpus alleging that during his trial he was deprived of the right of confrontation guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. Although petitioner's brief before the Arizona Supreme Court sounded basically in terms of general

denial of due process, the confrontation problems brought here were effectively brought before the state court by virtue of an Amicus Curiae brief submitted by the Arizona Civil Liberties Union.

Petitioner's contention is that he was denied his right to confrontation when the state called his original codefendant, Pedro Valenzuela, to the witness stand knowing that he would invoke his privilege not to testify because of the risk to him of self-incrimination. Petitioner further contends that this denial was aggravated by the prosecution's comment on Valenzuela's refusal to testify in closing argument.

The facts are as follows: the County Attorney, in his opening argument, mentioned Valenzuela very frequently and many times in connection with petitioner. Reference was also made to three conversations which were to have taken place between petitioner and Valenzuela, one before and two after the time of the alleged murder. Throughout the presentation of the prosecution's case Valenzuela and petitioner were connected. The jury was told that petitioner and Valenzuela went out with the deceased narcotics agent the night of the latter's death, and that Valenzuela and petitioner were seen later that night after the disappearance of the deceased. There was also mention of the fact that Valenzuela had been on death row, which came out during the examination of a witness. There was allegedly no direct evidence implicating petitioner in Singh's death, but only circumstantial evidence.

During trial Valenzuela was called to the witness stand after a hearing in the Court's chambers revealed that he was going to be called and invoke the privilege against self-incrimination. Over objection he answered questions relating to his name, age, and how long he had lived in Arizona. Then an objection to an immaterial question concerning his marital status was sustained. Then he successfully invoked his Fifth Amendment privilege against self-incrimination to a series of five questions which asked about his residence in May, 1963, whether he had lived in Phoenix in May, 1963, whether he knew the petitioner, and whether he was acquainted with LeRoy Pino (a witness) and Della Garcia (a witness). The questioning then ended and Valenzuela retired from the stand. The whole interrogation could not have taken more than a few minutes. The trial court declined to grant the petitioner's objections or motion for mistrial.

In closing argument, the County Attorney made reference to Valenzuela as the man "who refused to testify." Nothing further along this line was said.

It is petitioner's contention that calling Pedro Valenzuela to the stand when everyone, except the jurors knew that he was going to invoke the privilege (and in light of the constant connection which the prosecution alleged between Valenzuela and petitioner) served to prejudice petitioner because the jury was permitted to infer that since Valenzuela appeared guilty by his invocation of the privilege, then petitioner must be guilty also. Petitioner further contends that Valenzuela's invocation of the privilege was very critical since the only other corroboration for the conversations related in the prosecutor's opening statement was that of an allegedly incredible witness, one Hector Osorio. By refusing to testify, Valenzuela made the prosecution's statements look truthful and thereby gave bootstrap credibility to Osorio's corroborating testimony. The petitioner contends still further that Valenzuela's taking the stand was further aggravated by the prosecution's comment on Valenzuela's failure to testify.

This case is quite different from either Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); or Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Unlike Bruton, this case did not involve codefendants at a joint trial. The Bruton rule was established to protect a defendant when the jury is "being asked to perform the mental gymnastics of considering an incriminating statement against only one of two

defendants in a joint trial." Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 1423, 22 L.Ed.2d 684 (1969). In *Bruton* the Supreme Court was concerned with the denial of confrontation and cross examination where a witness was allowed to testify to an oral confession of a codefendant that implicated the defendant and for which the defendant could not cross examine the codefendant for truthfulness because he would not take the stand.

This case is also clearly different from *Douglas, supra,* In Douglas the prosecutor called the defendant's coconspirator to the witness stand and proceeded to read the witness's alleged confession to him. The witness was required to assert his Fifth Amendment privilege repeatedly as the prosecutor asked him to confirm or deny each statement. "The Court [in *Douglas*] found that this procedure placed powerfully incriminating evidence before the jury in a manner which effectively denied the right of cross-examination." *Frazier, supra,* 89 S.Ct. p. 1422. There is nothing in the questions asked, the frequency with which the privilege had to be invoked, or the length of time on the stand in the case at hand which even approaches the egregious nature of the prosecution's conduct in *Douglas*.

The facts of the case at hand are more closely analogous to the recent case of Frazier v. Cupp, *supra*. In *Frazier* the prosecution in its opening statement summarized the testimony it expected to extract from a witness who had been indicted jointly with the defendant and who had pled guilty to the same offense. Prior to trial, the prosecutor was warned that the witness would claim his privilege against self incrimination. The witness was called and informed the Court that he intended to assert the privilege in regard to every question concerning his activities on a certain morning in question. The matter was not pursued and he was dismissed from the stand, his entire appearance not lasting more than two to three minutes. As in the case at hand, the judge cautioned the jury not to regard any statement by counsel concerning the facts as evidence in the case. The Supreme Court found that in those circumstances the limiting instructions given were sufficient to protect Frazier's constitutional rights.

This Court finds the prejudice in this case no more drastic than that confronting the Supreme Court in *Frazier*. Valenzuela was on the stand for only two or three minutes. No summary of his proposed testimony had been given in opening statement. The questions asked and to which he invoked the privilege (i. e., whether he was in Phoenix at the time in question and whether he knew petitioner and two others) were proved by other witnesses. On this basis, it is hard to argue that "inferences from [Valenzuela's] refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." Namet v. United States, 373 U.S. 179, 183, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963).

There is one aspect of the *Frazier, supra,* case which differs from the petitioner's case herein. In *Frazier* there was a dispute as to whether the prosecution in "good faith" expected to get testimony from the witness. There is no doubt here that the prosecution knew Valenzuela would invoke his privilege. Although the Ninth Circuit opinion in *Frazier* appeared to turn on the prosecutor's "good faith," the Supreme Court was quick to point out that it did not feel that such a factor was controlling in determining whether a defendant has been deprived of the right of confrontation guaranteed by the Sixth and Fourteenth Amendments. The Court agreed with the Court of Appeals' factual determination in *Frazier*, but expressly chose not to decide whether the type of prosecutorial misconduct alleged to have occurred, that is, calling a witness knowing he will invoke the privilege, would have been sufficient to constitute reversible constitutional error. 89 S.Ct. at p. 1423.

The question left expressly unanswered by the Supreme Court in *Frazier, supra,* also is at the heart of the basic contention made by the petitioner herein. That is, whether the mere calling to the stand of a witness inextricably connected with the defendant, *knowing* he will invoke his privilege against self incrimination adds critical weight to the prosecution's case in a form not subject to cross examination and thus unfairly prejudices the defendant. The issue is posited notwithstanding the length of time the witness is on the stand, the types of questions asked, how many questions are asked, how many times the privilege must be invoked and the extent of testimony actually given.

██ This Court is of the opinion that the mere calling of a witness to the stand to make him invoke the privilege against self-incrimination does not constitute a denial of the right to confrontation. United States v. Gernie, 252 F.2d 664, cert. den. 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073, rehearing denied 357 U.S. 944, 78 S.Ct. 1383, 2 L.Ed.2d 1558. In *Gernie,* a witness who was implicated in the same crime for which the defendant was being tried and who had pled guilty prior to trial was called to the stand and invoked the privilege. The Second Circuit was of the opinion that it made no difference whether the government had reason to believe that the witness would refuse to testify. The government had a right "to produce the witness and thus show the jury that it is bringing forward such witnesses as may have knowledge bearing on the case." 252 F.2d at p. 669. This Court is persuaded by the logic of *Gernie* and the Supreme Court's recent decision not to adopt a "good faith" standard for judging prosecutorial misconduct.

██ The limiting instruction by the Court cured whatever minimal prejudice might have occurred. Of course, there are limits as to how long the witness can be kept on the stand, how many times he can be forced to invoke the privilege, and how detailed and extensive the questions which invoke the privilege can be. This Court only decides that the prejudice here did not go beyond that found in *Frazier, supra.*

In respect to calling Valenzuela this Court is wholly in agreement with the language of the Arizona Supreme Court:

"For the state to have presented its theory without calling Valenzuela would have meant leaving an obvious step out of its argument. Then the defense could have argued that the state's failure to produce the alleged accomplice meant that no corroboration for its theory would have come from such testimony. United States v. Gernie, *supra.*

There could have been no testimony more material to the prosecution of this case than that of Valenzuela. Further, since the privilege against self-incrimination is a personal immunity for the witness and does not disqualify him from being called, we cannot conclude otherwise but that, regardless of its reason to believe that Valenzuela would choose to invoke the privilege against self-incrimination, the state had the right to show that it was presenting all the relevant evidence at its disposal in order to prove its theory of the case." State v. Cota, 102 Ariz. 416, 421, 432 P.2d 428, 433 (1967)

██ This Court is also in agreement with the Arizona Supreme Court that the prosecution's comment on Valenzuela's refusal to testify was improper but that such conduct was not so prejudicial to an otherwise fair trial as to constitute grounds for reversal.

For the above stated reasons, the petition for writ of habeas corpus is denied.