601 P.2d 341

**The STATE of Arizona, Appellee,**

v.

**Thomas Michael O'BRIEN, Appellant.**

**No. 2 CA–CR 1405.**

Court of Appeals of Arizona,
Division 2.

Sept. 17, 1979.

Stephen D. Neely, Pima County Atty. by Alan D. Davidon and Richard L. Parrish, Deputy County Attys., Tucson, for appellee.

Jordan L. Green, Phoenix, for appellant.

## OPINION

RICHMOND, Chief Judge.

Defendant Thomas M. O'Brien was indicted on July 8, 1977, for conspiracy, securities fraud, and various violations of the Real Property Securities Dealers Act. After a jury trial, he was found guilty of 30 counts and was sentenced to concurrent prison terms of one to three years on each count. On appeal he contends:

1. The indictment was deficient in alleging the conspiracy count and the fraud counts.

2. Five counts charging him with unlawfully acting as a securities dealer and five counts charging him with selling securities

for which no permit had been obtained were multiplicious.

3. Counts charging him with failure to sign and deliver to the purchaser the statement required by the Real Property Securities Dealers Act and to retain an executed copy of the statement for four years are duplicitous.

4. He was improperly prosecuted for alleged fraud in the sale of real property securities under A.R.S. § 44–1991, the general antifraud section of the Securities Act.

5. His pretrial statements should not have been admitted in evidence.

6. Requiring two witnesses to claim the privilege against self-incrimination in front of the jury and then granting them immunity was prosecutorial misconduct requiring reversal.

7. His cross-examination of prosecution witnesses was unconstitutionally restricted.

8. Testimony regarding an undisclosed exhibit should have been stricken.

9. The trial court should have found his waiver of the attorney-client privilege was not knowing and intelligent.

10. His accountant should not have been permitted to testify.

11. State Real Estate Department closures should have been excluded.

12. Hearsay was improperly admitted.

13. The jury instructions improperly confused aiding and abetting with conspiracy.

14. Either he should have been permitted to introduce evidence on his lack of knowledge that his conduct was unlawful or it was error to instruct the jury on knowledge as an element of conspiracy.

Although he seeks dismissal of the conspiracy and 10 fraud counts and a new trial as to the remaining counts, he does not challenge the sufficiency of the evidence and none of his arguments is directed to his conviction for failure to post a real property securities dealer's bond or failure to file a real property securities dealer's annual report. All of the charges arose from the advertising, offering for sale, or sale of mortgages by O'Brien as president of Equitable Mortgage Company, Incorporated. Initially, he attacks the indictment on various grounds.

## INSUFFICIENCY

■ His first contention is that the conspiracy and fraud counts do not contain sufficient facts to inform him of the nature of the charges against him and thus violate the due process clauses of both the U. S. and Arizona constitutions. Though the counts contain the date of the event, the name of the victim, and the name of the defendant, he argues that they are deficient because they merely allege the language of the statute without describing the nature of the alleged conspiracy or the particular false statements or omissions that constitute each offense. The transcripts of the grand jury proceedings, however, include testimony about each alleged violation. Therefore, we need not reach the question of whether the charges in the indictment, taken alone, were sufficient to give him the notice and information guaranteed by the constitution. *See State v. Colvin*, 81 Ariz. 388, 307 P.2d 98 (1957); *cf. State v. Hagen*, 27 Ariz.App. 722, 558 P.2d 750 (1976) (bill of particulars unnecessary where transcript showed defendant aware of information required to prepare his defense). The transcripts provided "facts sufficiently definite to inform [him] of the offense charged." 17 A.R.S. Rules of Criminal Procedure, rule 13.2.

## MULTIPLICITY AND DUPLICITY

■ O'Brien also attacks the indictment on grounds of both multiplicity and duplicity. Multiplicity is defined as charging a single offense in multiple counts, whereas duplicity is charging multiple offenses in a single count. *United States v. Lubomski*, 277 F.Supp. 713, 716, n. 2 (N.D. Ill.E.D.1967). The indictment charges O'Brien with five counts of unlawfully acting as a securities dealer, A.R.S. § 44–2066.-03, and five counts of selling securities without a permit, A.R.S. § 44–2066.08. He

argues that the counts are multiplicious since he can only be convicted of one violation of each statute regardless of how many separate acts he engaged in. We disagree. A.R.S. § 44–2066.03 proscribes acting as a real property securities dealer without a permit. A.R.S. § 44–2066(2) defines a real property securities dealer as one who engages in the business of (a) selling or (b) offering to accept or accepting funds for continual reinvestment. The criminal act defined by § 44–2066.03 is, therefore, tied to a sale or transaction. Accordingly, each separate sale or transaction constitutes a separate offense. *See State v. Cartwright,* 20 Ariz.App. 94, 510 P.2d 405 (1973). In the case of § 44–2066.08, which prohibits selling securities without first obtaining a permit, it is equally clear that the proscribed conduct is the selling. Again each sale or transaction consummated without a permit constitutes a separate violation and therefore a separate offense. *See State v. Cartwright,* supra. *See also Katz v. United States,* 369 F.2d 130 (9th Cir. 1966), reversed on other grounds, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Robinson v. United States,* 366 F.2d 575 (10th Cir. 1966), cert. den. 385 U.S. 1009, 87 S.Ct. 717, 17 L.Ed.2d 547 (1967); *Mitchell v. United States,* 142 F.2d 480 (10th Cir. 1944). Cases cited by O'Brien stand for the proposition that when a course of conduct is the object of a criminal statute and the statute is ambiguous as to the "unit of prosecution," *see, e. g., United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), the statute shall not be construed to create a separate offense for every step of the course of conduct. They have no application to the statutes in this case.

■ We also reject O'Brien's contention that five counts of the indictment are duplicitous in charging him with both failing to "sign and deliver . . . a seller's statement" and failing to "retain an executed copy thereof." Each separate offense must be charged in a separate count. 17 A.R.S. Rules of Criminal Procedure, rule 13.3(a). Duplicitous indictments are prohibited in order to give notice to the defendant of exactly what charges he must defend against and to avoid the consequences of the inability of the jury to indicate which way they are voting on each of the charges. *Kimble v. State,* 539 P.2d 73 (Alaska 1975). A count is not considered duplicitous merely because it charges alternate ways of violating the same statute. *State v. Parmenter,* 74 Wash.2d 343, 444 P.2d 680 (1968). The seller of real property securities is required to issue a seller's statement to the buyer and to retain an executed copy. A.R.S. § 44–2066.04. The clear objective is to require the seller to make certain disclosures to the buyer at the time of sale. Retention of a copy of the disclosures is not a separate offense but merely an added responsibility designed to ensure and confirm performance of the principal objective. There was no error in charging O'Brien in one count with both elements of violating the same statute. *State v. Campbell,* 217 Kan. 756, 539 P.2d 329 (1975).

## SPECIFIC VS. GENERAL

■ O'Brien's next argument is that he was improperly indicted on 11 counts of fraud and conspiracy because he was charged with violation of and conspiracy to violate A.R.S. § 44–1991, the general securities regulation statute, instead of § 44–2066.05 dealing with fraud in the sale of real property securities. He urges that by passing a specific statute dealing with real estate securities, the legislature implicitly repealed the existing general securities statute insofar as it relates to real property securities. We do not agree.

■ Legislatures are presumed to enact statutes compatible with existing legislation. *Arizona State Board of Directors v. Phoenix Union High School District,* 102 Ariz. 69, 424 P.2d 819 (1967). Statutory repeal by implication is not favored. *State v. Carpenter,* 1 Ariz.App. 522, 405 P.2d 460 (1965). A specific statute does not supplant an earlier general statute unless all provisions are covered; that is, where the specific statute is narrower, the general one is not repealed. *People v. Lustman,* 13 Cal.

App.3d 278, 91 Cal.Rptr. 548 (1970); *United States v. Burnett,* 505 F.2d 815 (9th Cir. 1974). Where a single act violates more than one statute and there is no evidence of legislative intent to repeal one of them, the government has the option of prosecuting under either. *United States v. Brown,* 482 F.2d 1359 (9th Cir. 1973).

The principle that the specific law controls over the general applies only where the specific conflicts with the general. *State v. Canez,* 118 Ariz. 187, 575 P.2d 817 (App.1977). O'Brien concedes that the fraud provisions of § 44–2066.05 are limited to misrepresentations and omissions in the sale of real estate securities, whereas § 44–1991 also includes schemes, artifices and practices. Because the two statutes are not in conflict, the legislature did not preclude the use of § 44–1991 for real property security violations and the state had the option of prosecuting under either.

## PRETRIAL STATEMENTS

O'Brien argues that for several reasons it was error to admit his testimony from a deposition before the Arizona Corporation Commission Securities Division. The transcript was not listed as a document to be used at trial and the name of the authenticating witness was not included in the final witness list, although it had been in an earlier list. Imposition of the preclusion sanction of 17 A.R.S. Rules of Criminal Procedure, rule 15.7, for violation of the discovery rules is a matter within the discretion of the trial court. Absent a showing of prejudice, this court will not find an abuse of discretion. *State v. Clark,* 112 Ariz. 493, 543 P.2d 1122 (1975). The transcript had been provided to O'Brien prior to trial, and he could reasonably have expected someone to testify as to its accuracy. Further, he made no request to interview the witness. *See State v. Gambrell,* 116 Ariz. 188, 568 P.2d 1086 (1977). We find no abuse of discretion.

O'Brien also attacks the foundation of his prior testimony. The cases he cites, however, are inapposite. Both *Kinsey v. State,* 49 Ariz. 201, 65 P.2d 1141 (1937), and *State v. Cousins,* 4 Ariz.App. 318, 420 P.2d 185 (1966), deal with the authentication by a court reporter of a transcript prepared from the reporter's notes. Here, the witness was able to testify that the questions and answers read to the jury were those he had heard asked and answered at the time of the deposition.

O'Brien answered the questions on advice of counsel. He contends, however, that because his lawyer was also representing his wife and Equitable Mortgage Company, his statement was not made after the knowing and intelligent waiver of his Fifth Amendment rights. He does not suggest how the advice may have been affected by any conflicting interest in the lawyer's other clients and we find nothing in the record that would render the waiver ineffective.

## PROSECUTORIAL MISCONDUCT

O'Brien attempts to distinguish *State v. Cota,* 102 Ariz. 416, 432 P.2d 428 (1967), in urging that reversal is required because the state called two witnesses with knowledge that they would claim their privilege against self-incrimination. In *Cota,* the court suggested that there might be a case in which prosecutorial misconduct in relation to a witness's claim of privilege could deprive a defendant of a fair trial. O'Brien argues that this is such a case because the prosecutor knew not only that the witnesses would invoke the privilege, but that they then would be granted immunity. He does not suggest, however, and the record does not disclose how he was deprived of a fair trial by the procedure or how it may have improperly influenced the jury. The jury was instructed that the refusal of the witness to testify without being ordered to do so was not to be construed in any manner against the defendant. We find no error.

## RESTRICTION OF CROSS–EXAMINATION

The argument that O'Brien's constitutional right of confrontation and cross-examination was so unreasonably restricted

as to require reversal involves six witnesses. The first was the acting director of securities in the Corporation Commission Securities Division who testified on direct examination about communications with O'Brien concerning advertising violations. He was cross-examined about those communications but the trial court sustained objections to a line of questioning regarding his failure to enter a cease and desist order as a result of the violations. O'Brien claims such failure was inconsistent with the described violations and thus was relevant for impeachment. We disagree and see no unconstitutional encroachment on his right of cross-examination.

■ The trial court sustained the state's objection to a question directed to one of the victims:

All right, have you taken advantage of any of the rights that are described in this note about default and about bringing suit on the note?

The question was not material to any of the charges and the objection was properly sustained. Similarly, offers of proof from three other victims do not support O'Brien's claim that relevant evidence of bias or motive was improperly excluded. We find no reversible error.

## USE OF UNDISCLOSED EXHIBITS

■ We find no merit in O'Brien's next argument. Because a witness referred to a document that was not listed in the state's discovery materials, he contends it was reversible error for the trial court to refuse to strike the testimony of the witness. The document was not in the possession or control of the state but was produced voluntarily by the witness on cross-examination to substantiate his testimony, and was never offered in evidence. Although O'Brien now claims unfair surprise, he made no request at trial for a recess or continuance. The motion to strike was properly denied.

## ATTORNEY–CLIENT PRIVILEGE

The argument that O'Brien's pre-trial waiver of the attorney-client privilege was ineffective is identical to the argument regarding the waiver of his privilege against self-incrimination, and again is rejected.

## ACCOUNTANT–CLIENT PRIVILEGE

The contention that it was reversible error to permit the testimony of an accountant who had been employed by O'Brien on behalf of Equitable Mortgage is based on A.R.S. § 32–749, which provides:

Certified public accountants and public accountants practicing in this state shall not be required to divulge, nor shall they voluntarily divulge information which they have received by reason of the confidential nature of their employment. Information derived from or as a result of such professional source shall be deemed confidential, but this section shall not be construed as modifying, changing, or affecting the criminal or bankruptcy laws of this state or the United States.

■ The statute and privilege which it accords must be strictly construed, since no such privilege exists in the common law, *United States v. Bowman,* 358 F.2d 421 (3rd Cir. 1966), and the statute tends to prevent full disclosure of facts. Udall, Evidence, Sec. 91; 8 Wigmore, Evidence, Sec. 2192 (McNaughton rev. 1961); *cf. Arizona Title Guarantee & Trust Co. v. Wagner,* 75 Ariz. 82, 251 P.2d 897 (1952) (statute protecting "any communication" between husband and wife applies only to confidential communications). We hold the express language of the statute precludes its application to a criminal prosecution. *See State v. McKinnon,* 317 So.2d 184 (La.1975).

## REAL ESTATE DEPARTMENT CLOSURES

■ O'Brien argues that it was reversible error to admit into evidence letters from the state real estate department concerning suspension of approval of various subdivisions. The letters were offered and properly admitted as evidence of an omission or misrepresentation of a material fact by O'Brien and Equitable Mortgage Company, which claims in its offering letter that "in all cases the credit worthiness of the retail

purchases and the subdivider who is developing the individual properties is considered."

### HEARSAY

■ O'Brien incorrectly describes as hearsay the testimony of a witness regarding promises made to him at the time he purchased a lot that was the subject of one of the mortgages sold by Equitable Mortgage Company. The promises were not offered to prove the truth of the matter asserted, *see* 17A A.R.S. Rules of Evidence, rule 801(c), but to explain the purchaser's state of mind when he paid the inflated price reflected by the mortgage.

### JURY INSTRUCTIONS

O'Brien contends that his convictions on all counts must be reversed because the jury instructions confused aiding and abetting with conspiracy. He bases his argument on a portion of five instructions involving 17 counts of violation of the Real Property Securities Dealers Act, which first set out the elements of the various crimes and then stated:

> It would be sufficient to convict if you find beyond a reasonable doubt that the defendant under consideration aided, abetted, counseled, procured, induced, caused, or conspired with another person or persons to commit the acts contained in these elements.

■■ The use of "aided, abetted . . or conspired" in the disjunctive refutes the claim that the jury was misled to equate one with the other. We believe, however, the instructions constituted reversible error as to those 17 counts. By telling the jury the defendant could be convicted of the substantive crime if he merely conspired to commit the acts in each element, the quoted portion made it possible to reach a guilty verdict without a finding that the crime in fact had been committed because in conspiracy it is unnecessary to prove commission of the substantive crime that is the subject of the conspiracy so long as there is an agreement to commit the offense and an overt act. *See, e. g., Pinkerton v. United States,*

328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Schwartz,* 548 F.2d 427 (2nd Cir. 1977).

We therefore reverse his convictions of unlawfully acting as a real property securities dealer, A.R.S. § 44–2066.03, five counts; failure to sign, deliver and retain the statement required by § 44–2066.04, five counts; fraudulent advertising, § 44–2066.05, one count; failure to file advertising or sales literature, § 44–2066.05, one count; and sale of real property securities for which no permit had been obtained, § 44–2066.08, five counts.

### KNOWLEDGE—NO KNOWLEDGE

■ Finally, O'Brien argues that there is a fatal inconsistency between a pretrial ruling precluding evidence of his lack of knowledge that his acts were unlawful, and a jury instruction that he could not be guilty of conspiracy unless he knew either the objectives of the association or the means of achieving its objectives were unlawful. The state's motion in limine and the court's ruling, however, were not directed to the conspiracy charge but only to the securities fraud and Real Property Securities Dealers Act violations. The latter are general intent crimes, *see State v. Burrow,* 13 Ariz.App. 130, 474 P.2d 849 (1970), and it was unnecessary to prove knowledge that conduct violating § 44–1991(2) was unlawful so long as the defendant acted wilfully. A.R.S. § 44–2036 (since amended, effective October 1, 1978). *See United States v. Brown,* 578 F.2d 1280 (9th Cir. 1978).

O'Brien's convictions of unlawfully acting as a real property securities dealer, failure to sign, deliver and retain the disclosure statement, fraudulent advertising, failure to file advertising and sale literature, and sale of real property securities for which no permit had been obtained are vacated and those counts are remanded for a new trial. The other 13 convictions and sentences are affirmed.

HOWARD and HATHAWAY, JJ., concur.