786 P.2d 959

**STATE of Arizona, Appellee,**

v.

**Samuel Villegas LOPEZ, Appellant.**

**No. CR–87–0184–AP.**

Supreme Court of Arizona,
En Banc.

Jan. 16, 1990.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Janet Keating, Asst. Attys. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

MOELLER, Justice.

## JURISDICTION

Defendant, Samuel Villegas Lopez, was convicted of first degree murder, kidnapping, sexual assault, and burglary. He was sentenced to death for the murder and to aggravated, consecutive terms of twenty-one years for each of the other convictions. He appeals. We have jurisdiction under Ariz. Const. art. 6, § 5(3), and A.R.S. § 13–4031.

## ISSUES PRESENTED

1. Whether the trial court erred by instructing the jury on two theories of first degree murder but submitting only one form of verdict for first degree murder.

2. Whether the trial court erred by denying defendant's motion for directed verdicts on the sexual assault charges.

3. Whether the trial court erred by not instructing the jurors on second degree murder.

4. Whether the trial court committed fundamental error by failing to give a *Willits* instruction *sua sponte*.

5. Whether the jury instruction on dangerousness constituted fundamental error.

6. Whether the trial court erred by finding that defendant's prior conviction for resisting arrest was a felony "involving the use or threat of violence on another person" within the meaning of A.R.S. § 13–703(F)(2).

7. Whether the trial court erred by finding that the murder was especially cruel within the meaning of A.R.S. § 13–703(F)(6).

8. Whether the trial court erred by finding that defendant failed to establish as a mitigating circumstance that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired.

9. Whether art. 4, pt. 1, § 1(6) of the Arizona Constitution precludes the Arizona Legislature from authorizing judges to impose death penalties.

## FACTS

On October 29, 1986, sometime around 11:00 a.m., a Phoenix police officer made a "check welfare" call at the apartment residence of the murder victim. The check was in response to a call from the victim's fellow employees expressing concern that the consistently prompt victim inexplicably failed to arrive at work.

Approaching the apartment, officers noticed a broken window next to the front door. Entering the apartment, they discov-

ered the partially nude body of the victim. Overturned and broken furnishings in the blood-splattered apartment indicated that a tremendous struggle took place prior to the murder. A scarf had been stuffed into the victim's mouth, and she had been blindfolded with her pajama pants. An autopsy revealed that her throat had been slashed, and she had been stabbed twenty-three times in her left breast and upper chest and three times in her lower abdomen. Seminal fluid was found in both her vagina and anus.

Defendant had been seen in the neighborhood the night of the crime. He was also seen in the early morning after the murder walking down the street, soaking wet, as if he had recently washed himself. Several days after the murder, the police were questioning defendant about an unrelated matter when he mentioned something about a woman who had been stabbed and whose throat had been slashed.

The information that the victim's throat had been slashed had never been released to the public. Realizing that only the murderer would know of the slashing, the police focused their investigation upon defendant. A check of his fingerprints matched those found at the victim's apartment and his body fluids matched those obtained from the victim's body.

A jury convicted defendant of first degree murder, sexual assault, kidnapping, and burglary. After a sentencing hearing, the trial judge found two statutory aggravating circumstances: (1) the defendant had a prior conviction for resisting arrest, which was considered a death-qualifying conviction under A.R.S. § 13–703(F)(2); and (2) the murder was committed in an especially heinous, cruel or depraved manner under A.R.S. § 13–703(F)(6). In support of mitigation, defendant argued that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired. The trial court found that defendant did not prove this mitigating factor by a preponderance of the evidence. Finding no other mitigation, the trial judge sentenced defendant to death for the murder and to aggravated, consecutive terms of twenty-one years for each of the other convictions.

## DISCUSSION

### 1. First Degree Murder Verdict Form

Defendant contends that the state's use of two theories of first degree murder (premeditated and felony murder) and the use of two felonies supporting the felony murder charge (sexual assault and burglary) denied him due process of law and the right to a unanimous jury verdict.

We have held that it is permissible to submit one form of verdict to a jury for first degree murder although the state proceeds under both premeditation and felony murder theories. *See State v. Smith,* 160 Ariz. 507, 513, 774 P.2d 811, 817 (1989). In a case predating *Smith,* we held that, although a unanimous jury verdict is required on whether the defendant committed the criminal act charged, a "defendant is not entitled to a unanimous verdict on the precise manner in which the act was committed." *State v. Encinas,* 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982). In the *Smith* case, we did urge trial courts in the future to submit alternate forms of verdict when alternate theories of first degree murder are submitted to a jury. The instant case was tried prior to the issuance of the *Smith* opinion.

In this case, the defendant refines somewhat the argument made and rejected in *Smith* and *Encinas.* Defendant challenges the use of one verdict form when two felonies in support of the felony murder theory are alleged. He contends this deprived him of a unanimous jury verdict and due process. We note, however, that defendant was in fact unanimously convicted of both of the underlying felonies of sexual assault and burglary. Thus, defendant clearly was not prejudiced. In any event, we see no distinction between the state's use of dual felony murder theories and the state's use of dual first degree murder theories. In neither event is a defendant entitled to a unanimous verdict on

the precise manner in which the crime is committed. *See Encinas*, 132 Ariz. at 496, 647 P.2d at 627.

### 2. Motion for Directed Verdict on Sexual Assault

Defendant was charged with two counts of sexual assault. The state's theory was that one assault occurred with vaginal penetration and the other assault occurred with anal penetration. A toxicologist testified that it was possible that the seminal fluid leaked from the vagina to the rectum. After the state rested its case, defendant moved for a directed verdict on the sexual assault counts. The court denied the motion. During deliberations, the jury inquired whether one count related to anal intercourse and one to vaginal intercourse. After being informed that such was the case, the jury convicted on one count of sexual assault and acquitted on the other. On appeal, defendant contends the evidence is insufficient to support the one guilty verdict.

■ Under A.R.S. § 13–1406(A), sexual assault is committed "by intentionally or knowingly engaging in sexual intercourse ... with any person without consent of such person." Defendant contends that there is a lack of evidence of force or fear accompanying the sexual act and that the evidence precludes a finding that consent was withheld. In part, defendant appears to argue that the intercourse may have occurred after death. For purposes of determining the sufficiency of the evidence, the toxicologist's testimony that his tests showed that the sexual act "happened right prior to death" disposes of this argument. R.T. 5/22/87, at 24.

In determining the sufficiency of the evidence, we view the evidence in the light most favorable to sustaining the verdict and resolve all reasonable inferences against the defendant. *State v. Long*, 121 Ariz. 280, 589 P.2d 1312 (1979). Our task is to determine whether sufficient evidence existed so that a rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Our

review of the evidence, some of which is referred to in the above statement of facts, leads inexorably to the conclusion that the trial court properly denied the motion for directed verdict.

### 3. Instructing the Jury on Second Degree Murder

Defendant contends the jury should have been instructed on second degree murder based on evidence of defendant's intoxication. The jury did receive an instruction informing it as to the legal effect of intoxication. The trial court, however, denied defendant's request for a second degree murder instruction.

■ As previously discussed, the state proceeded on dual theories of first degree murder in this case, *i.e.*, premeditated and felony murder. No lesser-included homicide offense exists for felony murder; thus, the trial court did not err by failing to so instruct on the felony murder theory. *State v. Celaya*, 135 Ariz. 248, 255, 660 P.2d 849, 856 (1983) (citing *State v. Arias*, 131 Ariz. 441, 641 P.2d 1285 (1982)).

■ Under A.R.S. § 13–1101(1), premeditated murder occurs if the defendant *intends* or *knows* that his acts will kill another and his *intention* or *knowledge* precedes the killing by a length of time sufficient to permit reflection. *See State v. Rankovich*, 159 Ariz. 116, 122, 765 P.2d 518, 524 (1988). The jury may consider voluntary intoxication to negate the mental state of "intentionally" but not the mental state of "knowingly." *See* A.R.S. § 13–503; *State v. Ramos*, 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982). *See also State v. Neal*, 143 Ariz. 93, 98, 692 P.2d 272, 277 (1984) ("first degree murder requires an 'intentional' or 'knowing' *mens rea* on the part of the assailant and voluntary intoxication only negates the 'intentional' *mens rea*."). Assuming *arguendo* the jurors found that defendant was intoxicated, they could properly convict defendant of first degree murder if they believed he "knowingly" caused the victim's death. Because a defendant need only act knowingly in committing a premeditated murder, evi-

dence of defendant's intoxication did not require the trial court to instruct the jury on second degree murder. The jurors were properly instructed that intoxication could negate intention, although they obviously rejected that possibility because they found him guilty of several intentional acts.

### 4. *Willits* Instruction

On cross-examination, the state's serology expert acknowledged that additional scientific tests existed that, if performed, could possibly have further defined and narrowed the blood groups identified. Defendant argues that because these tests, if performed, might have excluded him, he was entitled to a *Willits* instruction although he did not request one.

■ A *Willits* instruction is appropriate when the state destroys or loses evidence potentially helpful to the defendant. *See State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964); *see also State v. Hansen*, 156 Ariz. 291, 295, 751 P.2d 951, 955 (1988) (*Willits* instruction upon proof that (1) the state failed to preserve material evidence that was accessible and might have tended to exonerate the defendant, and (2) prejudice resulted). Having preserved the evidence and given defendant an opportunity to test it, the state does not violate due process by failing to perform any particular tests. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

■ Because defendant did not request a *Willits* instruction, he recognizes that he cannot be heard to complain on appeal unless the error, if any, rises to the level of fundamental error. However, we find no error, fundamental or otherwise. In this case, the blood samples were collected, tested, and preserved by the state. The blood and saliva samples from defendant, the blood sample from the victim, another blood sample from the apartment, and the filter paper with the victim's vaginal smear were all released to defendant for independent testing at the Institute of Forensic Sciences in Oakland, California. Defendant had an expert analyze the blood evidence but did not call that expert at trial. Clearly, defendant had ample opportunity

to have any additional test conducted which might exonerate him.

The record does not support defendant's present claim that the trial court should have *sua sponte* given a *Willits* instruction.

### 5. Instruction on Dangerous Offense

■ Shortly after the indictment, the state filed an allegation of dangerousness, pursuant to A.R.S. § 13–604, alleging that the crimes were committed with a deadly weapon or dangerous instrument, to wit: a knife or knife-type instrument. At trial, the trial court instructed the jury, without objection, that a dangerous offense involves the "use of a deadly weapon or dangerous instrument, or the intentional or knowing infliction of serious bodily injury upon another." Although defendant did not object to this instruction at trial, he contends on appeal that it constitutes fundamental error because it (1) was duplicitous, and (2) allowed punishment to be increased by the jury's finding on a basis not charged.

The trial court did not err by giving the instruction. The defendant's first argument, relating to alleged duplicity, is without merit. In *State v. O'Brien*, 123 Ariz. 578, 582, 601 P.2d 341, 345 (App.1979), duplicity was defined as "charging multiple offenses in a single count." The court of appeals continued that "a count is not considered duplicitous merely because it charges alternate ways of violating the same statute." *Id.* at 583, 601 P.2d at 346. Similarly, we find that an instruction that tracks the statutory language of A.R.S. § 13–604 in defining alternate ways for a finding of dangerousness is not "duplicitous."

■ Defendant's second argument concerning the instruction on dangerousness is also meritless, and is disposed of by *State v. Villafuerte*, 142 Ariz. 323, 690 P.2d 42 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1234, 84 L.Ed.2d 371 (1985). In *Villafuerte*, the state's allegation of dangerousness was cast only in terms of the "intentional or knowing infliction of serious

**114**

physical injury upon another." 142 Ariz. at 329, 690 P.2d at 48. The trial court instructed the jury that use of a dangerous instrument could render the felony dangerous. Defendant contended on appeal that the allegation relative to injury was insufficient to put him on notice or to convict him of a dangerous felony based upon a finding of the use of a dangerous instrument. Following a discussion of earlier cases, we held in *Villafuerte* that the allegation of dangerousness by reason of injury was adequate to support a conviction with a finding of dangerousness by use of an instrument. This case represents merely the flip side of the same coin. We find no error.

### 6. Prior Felony Conviction Under A.R.S. § 13–703(F)(2)

With respect to the death penalty, one of the two statutory aggravating circumstances found by the court was that defendant was previously convicted of a felony "involving the use or threat of violence on another person" under A.R.S. § 13–703(F)(2). The prior conviction was for resisting arrest under A.R.S. § 13–2508. Citing *State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007 (1983), defendant argues that, for a prior felony to qualify under A.R.S. § 13–703(F)(2), it must *by its statutory definition* necessarily involve the use or threat of violence upon another person.

We recently followed and explained *Gillies* in *State v. Romanosky*, 162 Ariz. 217, 227, 782 P.2d 693, 703 (1989), where we held "[i]f, under the statutory definition the defendant could have committed and been convicted of the crime without using or threatening violence, the prior conviction may not qualify as a statutory aggravating circumstance under A.R.S. § 13–703(F)(2)." *Id.* at 228, 782 P.2d at 704.

Accordingly, we need to examine the statute under which defendant was previously convicted. A.R.S. § 13–2508(A)(1), (2) defines resisting arrest as:

1. Using or threatening to use physical force against the peace officer or another; or

2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

Defendant notes that although subsection (1) defines resisting as involving the use or threat of physical force, subsection (2) defines resisting as including "any other means" that would create a substantial risk of physical injury to a person. The state argues that because the "any other means" must involve "a substantial risk of causing physical injury," it necessarily involves the use or threat of violence. However, under the state's reading of the statute, which is tortuous at best, subsection (2) is a mere rescript of subsection (1). We believe that subsection (2) was intended to and does apply to situations where the person did not use or threaten to use violence upon an officer or another, but still created a substantial risk that someone would be physically injured.

Because one can commit the crime of resisting arrest under A.R.S. § 13–2508(A) without using or threatening violence, a conviction under it does not qualify as a statutory aggravating circumstance under A.R.S. § 13–703(F)(2). Accordingly, the trial court's finding must be set aside.

### 7. Finding of Cruelty

A.R.S. § 13–703(F)(6) provides that an aggravating circumstance exists if the crime is committed in "an especially heinous, cruel or depraved manner." The trial court found that each of the three alternative factors was present. Although defendant does not challenge the findings of heinousness or depravity, our independent review of the record satisfies us that these elements were properly found. Defendant does, however, challenge the finding of cruelty.

Defendant contends that absent proof of "extended consciousness of the victim substantiating awareness of the pain of each of the multiple wounds," a finding of cruelty cannot be sustained. "Cruelty" involves the victim's pain or suffering before death. *State v. Richmond*, 136 Ariz. 312, 666 P.2d 57, *cert. denied*, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). Evi-

dence must exist beyond a reasonable doubt that the victim was conscious during the act of violence or infliction of wounds preceding the victim's death. *State v. Poland,* 144 Ariz. 388, 405, 698 P.2d 183, 200, *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1985). Our case law does not support defendant's assertion that a finding of cruelty requires that the victim be conscious for each and every wound.

■ When the officers arrived at the victim's residence, the apartment's condition evinced that a bloody battle had raged throughout every room in the apartment. Blood was splattered throughout the apartment and there were blood drops on the bathroom and kitchen floors. A concentration of blood drops in the kitchen, as well as the stream of dried blood down the victim's body and onto her bloodstained feet, indicated the victim stood for some time while being stabbed. The victim had three lacerations on her scalp and a stab wound to the left cheek. These injuries, although not fatal, caused a considerable amount of bleeding. The victim had lacerations on her right arm and bruises and cuts on her left hand, all of which were characteristic of defensive wounds.

From the evidence of a vicious and prolonged beating, stabbing and rape, the trial judge could and did conclude that the victim endured great pain and suffering prior to death. We uphold the finding that the murder was committed in an especially cruel manner under A.R.S. § 13–703(F)(6).

### 8. Mitigating Circumstances

Defendant contends the trial court erred by not finding his alleged intoxication at the time of the murder a mitigating circumstance under A.R.S. § 13–703(G)(1). Defendant offered no evidence concerning intoxication at his sentencing hearing. He relied instead on the state's opening statement and the testimony of two trial witnesses as proof that his intoxication was a significant impairment.

■ Intoxication, by itself, does not constitute mitigation. *State v. Woratzeck,* 134 Ariz. 452, 458, 657 P.2d 865, 871 (1982). Ample evidence exists that defendant's in-

toxication was not pronounced enough to impair significantly his capacity to appreciate his conduct or to conform to the law. Based upon our review of the record, we agree with the trial court's assessment of the evidence.

### 9. Initiative Measure on Jury Sentencing

■ Defendant contends that the Arizona legislature lacked the authority in 1973 to alter, by statute, a 1918 initiative providing for jury sentencing in first degree murder cases. The 1918 initiative provided:

Every person guilty of murder in the first degree shall suffer death or imprisonment in the state prison for life, at the discretion of the jury trying the same, or, upon the plea of guilty the Court shall determine the same.

Thus, prior to 1973, the jury or judge (in case of a guilty plea) was allowed full discretion in imposing the death sentence. *See State v. McGee,* 91 Ariz. 101, 111–112, 370 P.2d 261, 267–68, *cert. denied,* 371 U.S. 844, 83 S.Ct. 75, 9 L.Ed.2d 79 (1962).

In response to the United States Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Arizona legislature enacted a new death penalty statute. It provided for the death penalty only in limited circumstances and provided for judge-sentencing. Laws 1973, ch. 138, § 5. *See generally* Note, *Resurrection of the Death Penalty, Validity of Arizona's Response to Furman v. Georgia,* 1974 Ariz.St.L.J. 257.

Defendant contends that the 1973 statute violates article 4, part 1, § 1(6) of the Arizona Constitution which provides, in pertinent part:

The ... power of the Legislature, to repeal or amend, shall not extend to initiative ... measures approved by a majority vote of the qualified electors.

Ariz. Const. art. 4, pt. 1, § 1(6).

Defendant argues that the 1973 statute was an attempt by the legislature to repeal jury sentencing in death penalty cases as established by the 1918 initiative and is, therefore, void. Although we are remand-

**116**

ing this particular case for resentencing, we deal with defendant's argument because we have not previously done so and its resolution determines the availability of the death sentence in this case as well as in other cases.

Defendant's argument is controlled by *Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952). In *Adams,* we noted that there was a "marked distinction between a law approved by a majority of the qualified electors and a law approved by a majority of the electors voting thereon." *Id.* at 279, 247 P.2d at 620. We held that the anti-repeal provision of article 4 applied only to initiative measures approved by a majority of qualified electors, not merely a majority of those actually voting.

For the November 5, 1918 election, at which the death penalty amendment was approved, the record shows there were 79,-357 registered voters in Arizona. The election results show that 20,443 voted for the amendment, 10,602 voted against. Laws of Arizona, 1919 at 21. Thus, like the initiative in question in *Adams,* it passed by a majority of the electors who actually voted, but not by a majority of all qualified electors.

As noted in *Adams,* if the framers intended "qualified electors" under subsection 1(6) to be limited to those who actually voted upon the measure, the words "voting thereon" could have been added. *Id.* at 273, 247 P.2d at 619. Furthermore, as one commentator noted:

> The original proposition provided that the governor could not veto any "measures initiated by or referred to the people." It is a fair inference that the final language—with "qualified electors" substituted for "people"—[is consistent with] the broad reading accorded it by the *Adams* court.

Bakken, *The Arizona Constitutional Convention of 1910,* 1978 Ariz.St.L.J. 1, 12. *Adams* has been on the books for nearly 40 years. Defendant argues that it was wrongly decided and that we should overrule it. We decline to do so.

## DISPOSITION

With respect to the convictions, the issues raised on appeal present no error, and our independent review reveals no fundamental error. Therefore, the convictions are affirmed, as are all the sentences except the death sentence on the murder count. Because one of the two statutory aggravating circumstances found by the trial court must be set aside, we remand for resentencing on the murder count because we do not know and cannot ascertain what result would have obtained but for that finding. In doing so, we are cognizant that defendant has also made several other attacks on the Arizona death penalty scheme. These attacks are not peculiar to this particular case and we have recently dealt with most, if not all, of them in other cases. In the event defendant again receives the death penalty, another appeal is mandated. *See* Rules 31.2(b), Ariz.R. Crim.P., 17 A.R.S. In that eventuality, we will consider any death penalty arguments defendant then advances given the state of the record and the law at that time.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.