IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,          )
                               )     2 CA-CR 2000-0260
                    Appellee,  )     DEPARTMENT A
                               )
            v.                 )     O P I N I O N
                               )
ALICE CATHERINE JEFFREY,       )
                               )
                    Appellant. )
                               )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-66422

Honorable Howard Hantman, Judge

AFFIRMED

---

Janet Napolitano, Arizona Attorney General
  By Randall M. Howe and Kerri L. Chamberlin                          Tucson
                                                      Attorneys for Appellee

Susan A. Kettlewell, Pima County Public Defender
  By Rebecca A. McLean                                               Tucson
                                                     Attorneys for Appellant

---

F L Ó R E Z, Judge.

¶1 After her first trial, a jury convicted appellant Alice Jeffrey of four counts of disorderly conduct and one count of theft by control, but could not reach a verdict on four kidnapping charges. Following her second trial, a new jury convicted Jeffrey on all kidnapping counts. On appeal from the kidnapping convictions, Jeffrey challenges the trial court's refusal to instruct the jury that the state bore the burden of disproving her duress defense, its preclusion of testimony about an alleged suicide attempt by the person she claims forced her to commit the offenses, and its denial of a mistrial after the jury discovered a bullet that had not been admitted into evidence. We affirm.

¶2 We view the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Jeffrey. *See State v. Riley*, 196 Ariz. 40, 992 P.2d 1135 (App. 1999). In the early morning hours of June 16, 1999, J., D., T., and S. heard yelling, screaming, and pounding on the front door of the house where they were staying. When J. and T. went to the door, a man shouted, "Tucson Police Department," and demanded that they open the door.

¶3 After they opened the door, Quentin Devine and Jeffrey entered the house. Claiming to be from the narcotics squad, Devine ordered J. and T. at gunpoint to lie on the ground and demanded to know where "the drugs" were. J. and T. told Devine that no drugs were in the house. Devine then asked if anyone else was in the house, and J. told him her boyfriend, D., was there. While Devine went into one of the bedrooms to find D., Jeffrey stayed in the living room with J. and T. As Devine forced D. into the living room at gunpoint, S., who was still in her bedroom, called the police. At Devine's request, Jeffrey searched for the keys to D.'s car and took D.'s wallet. Jeffrey repeatedly told the victims not to "look up" and said, "[T]his is serious, we're not kidding around." Jeffrey also alerted Devine when any of the victims looked up.

2

¶4        After S. emerged from her bedroom, Devine began to restrain the victims with electrical cords Jeffrey had cut from various appliances around the residence. As he was tying up the victims, he handed his gun to Jeffrey on at least two occasions. After the police arrived, Devine killed himself. Jeffrey was arrested.

**Duress Jury Instruction**

¶5        Jeffrey contends that, to the extent A.R.S. § 13-205 requires a defendant to prove by a preponderance of the evidence that he or she acted under duress while committing an offense, the statute is unconstitutional. We review the constitutionality of a statute de novo. *State v. Taylor*, 196 Ariz. 584, 2 P.3d 674 (App. 1999). But we presume that a statute is constitutional; thus, Jeffrey bears the burden of overcoming this presumption. *See State v. Bonnewell*, 196 Ariz. 592, 2 P.3d 682 (App. 1999).

¶6        Prior to the enactment of § 13-205, the state bore the burden of disproving a defendant's affirmative defense once the defendant satisfied "the very limited burden of raising evidence to support the giving of an instruction on [the asserted] defense." *State v. Sierra-Cervantes*, 201 Ariz. 459, ¶9, 37 P.3d 432, ¶9 (App. 2001). Now, however, defendants generally carry the burden of proving their affirmative defenses, *see id.*, as § 13-205(A) states: "Except as otherwise provided by law, a defendant shall prove any affirmative defense raised by a preponderance of the evidence." Division One of this court has previously recognized the constitutionality of this statutory change in the burden of proof. *State v. Farley*, 199 Ariz. 542,

3

19 P.3d 1258 (App. 2001);[1] *see also State v. Martinez*, ___ Ariz. ___, 47 P.3d 1145 (App. 2002) (same).

¶7        But, relying on *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), Jeffrey argues that § 13-205 cannot constitutionally place "the burden on the defense to prove duress by a preponderance" of the evidence because "a duress defense negates the mental state required for kidnapping." In *Patterson*, the United States Supreme Court explained that, although the Due Process Clause requires a state to prove all the elements of a charged offense beyond a reasonable doubt, it does not require the state to disprove a defendant's affirmative defense unless the defense negates "any facts of the crime which the State [must] prove." 432 U.S. at 207, 97 S. Ct. at 2325, 53 L. Ed. 2d at 290.

¶8        Courts differ on whether a duress defense negates an element of the underlying offense. *Compare United States v. Mitchell*, 725 F.2d 832 (2d Cir. 1983) (state bears burden of disproving at least one element of duress defense beyond a reasonable doubt), *and People v. Condley*, 138 Cal. Rptr. 515 (Ct. App. 1977) (duress defense negates element of offense), *with United States v. Johnson*, 956 F.2d 894, 897 (9th Cir. 1992) ("The defense [of duress] assumes that the defendant has voluntarily performed the criminal act; his or her will has not been so overcome that another choice was impossible; the act done was intentional."), *and State v. Riker*, 869 P.2d 43 (Wash. 1994) (duress defense does not negate element of offense).

---

[1]We note that our supreme court has granted review and held oral argument in *State v. Casey*, No. 1 CA-CR 00-0476 (memorandum decision filed April 12, 2001). Based on *State v. Farley*, 199 Ariz. 542, 19 P.3d 1258 (App. 2001), Division One of this court rejected the defendant's argument in *Casey* that the trial court's self-defense instruction had improperly shifted the burden of proof to him.

¶9 No Arizona court has determined whether the duress defense contained in A.R.S. § 13-412 negates an element of the charged crime or simply excuses otherwise criminal conduct.[2] In considering this matter, however, we see no need to treat duress differently from other affirmative defenses, such as insanity, self-defense, defense of another, and entrapment. *See State v. Moorman*, 154 Ariz. 578, 744 P.2d 679 (1987) (state may constitutionally require defendant to prove insanity defense by clear and convincing evidence); *Sierra-Cervantes* (defendant bears burden of proving self-defense); *Farley* (requiring defendant to prove justification defense constitutional under Arizona Due Process Clause); *State v. Preston*, 197 Ariz. 461, 4 P.3d 1004 (App. 2000) (requiring defendant to prove entrapment defense by clear and convincing evidence does not violate Due Process Clause); *see also Martinez* (defendant bears burden of proving elements of crime prevention defense despite presumption in A.R.S. § 13-411(C) that defendant acted reasonably if he or she was attempting to prevent one of the specified offenses).

¶10 Generally, "an affirmative defense is a matter of avoidance of culpability even if the State proves the offense beyond a reasonable doubt." *Farley*, 199 Ariz. 542, ¶11, 19 P.3d 1258, ¶11. As to the duress defense specifically, a noted treatise explains:

> The rationale of the defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question. Nor is it that the defendant has not engaged in a voluntary act. Rather it is that, even

---

[2]Section 13-412(A), A.R.S., provides:

> Conduct which would otherwise constitute an offense is justified if a reasonable person would believe that he was compelled to engage in the proscribed conduct by the threat or use of immediate physical force against his person or the person of another which resulted or could result in serious physical injury which a reasonable person in the situation would not have resisted.

> though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude.

1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.3, at 614 (1986) (footnotes omitted); *see People v. Lemons*, 562 N.W.2d 447 (Mich. 1997); *State v. Rios*, 980 P.2d 1068 (N.M. Ct. App. 1999); *see also* 1 Rudolph J. Gerber, *Criminal Law of Arizona* § 4-412 (2d ed. 1993 & Supp. 2000) (noting that duress is not element of crime of escape and that duress may be analogous to defense on which defendant bears burden of proof and persuasion).

¶11　　　　Adopting and applying this principle, we conclude that A.R.S. § 13-1304(A) does not require the state to prove that a defendant was not under duress when he or she committed a kidnapping. Rather, a person commits kidnapping by knowingly restraining another person with the intent to "[i]nflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony." § 13-1304(A)(3). Accordingly, because the absence of duress is not an element of the offense, the legislature may constitutionally impose upon the defendant the burden of proving it. *See Farley*, 199 Ariz. 542, ¶11, 19 P.3d 1258, ¶11 (although "the State is constitutionally required to prove every element of the offense, our courts have not held that the State is constitutionally required to negate affirmative defenses").

¶12　　　　In a related argument, Jeffrey also contends the trial court erred in denying her request for an instruction informing the jury that the state bore the burden of disproving her duress defense beyond a reasonable doubt. We review a trial court's decision on a requested jury instruction for a clear abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 896 P.2d 830 (1995). Because a trial court may constitutionally require a defendant to prove a duress defense by a preponderance of the evidence, the trial court did not abuse its discretion in refusing to give

6

Jeffrey's requested instruction, which treated lack of duress as an element of the crime. *See State v. Hussain*, 189 Ariz. 336, 942 P.2d 1168 (App. 1997) (defendants are not entitled to jury instructions based on incorrect statements of law). Because a duress defense seeks to excuse a defendant's criminal act rather than negate any element of it, the trial court did not err in refusing to give Jeffrey's requested jury instruction. *Cf. Sierra-Cervantes*, 201 Ariz. 459, ¶11, 37 P.3d 432, ¶11 ("Juries should not be advised that the state bears any burden on self-defense. The state has none.").

**Precluded Testimony**

¶13        Jeffrey also asserts that the trial court erred when it precluded evidence that Devine had attempted to commit suicide eight days before the events at issue. Specifically, she argues that evidence would have supported her claim that Devine had forced her to assist him during the home invasion, insisting it demonstrated Devine's "unstable state of mind" and his intent to "end[] his life." We will not disturb a trial court's determination on the admissibility and relevance of evidence absent an abuse of discretion. *State v. Amaya-Ruiz*, 166 Ariz. 152, 800 P.2d 1260 (1990).

¶14        Jeffrey contends that she should have been allowed to introduce testimony from a motel manager and a police officer about Devine's earlier suicide attempt because it was relevant to her duress defense. According to Jeffrey, this testimony would have substantiated her contention that she had "met up with some guy, one minute he seemed pleasant, then he became erratic," and that, because of his erratic behavior, she had felt compelled to assist Devine in the criminal activities at issue. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401, 17A A.R.S. The trial

7

court concluded that the evidence of Devine's suicide attempt was "too tangential" and not "relevant to anything that [Devine had] acted this way."

¶15 Even assuming the trial court erred in precluding the proposed testimony, the error was harmless. Error is harmless when it can be said beyond a reasonable doubt that it did not affect the verdict. *State v. Lopez*, 174 Ariz. 131, 847 P.2d 1078 (1992). We can say that here, because the evidence overwhelmingly established Jeffrey's guilt and lack of duress.

¶16 At trial, Jeffrey testified that she had not attempted to escape even though she was, at times, alone and out of Devine's sight when she was cutting the electrical cords. Further, she testified that Devine had twice given her his gun and that she had returned it to him. The victims also confirmed that Jeffrey had possessed Devine's gun more than once and that she had voluntarily returned it to him. Jeffrey also admitted to a police officer that she had assisted Devine because of her "absolute stupidity." Additionally, all four victims testified that Jeffrey had appeared to be willing to assist Devine in his efforts to restrain them, had forcefully instructed them not to look at her and Devine, and had told Devine when she believed one of the victims was looking at him. Jeffrey also could not point to any previous statements she had made to the detectives who interviewed her that she had been forced to participate in the incident. Given the nature and extent of the evidence against Jeffrey, we conclude, beyond a reasonable doubt, that the proposed testimony from the manager and the police officer would not have affected the verdicts. Therefore, any error in the trial court's evidentiary ruling was harmless.

**Extraneous Evidence**

¶17 Finally, Jeffrey contends the trial court erred in denying her motion for a mistrial, made after the deliberating jurors found a bullet that had not been admitted into evidence in a properly admitted evidence bag containing Jeffrey's purse. She argues that the jury's discovery

of a bullet that was the same caliber and brand as the bullets in Devine's gun was "prejudicial" and "went to the heart of her defense." The decision whether to grant a new trial is within the sound discretion of the trial court, *State v. Hansen*, 156 Ariz. 291, 751 P.2d 951 (1988), and we will not disturb its ruling absent an abuse of this discretion. *State v. Chaney*, 141 Ariz. 295, 686 P.2d 1265 (1984).

¶18        To cure the jurors' inadvertent exposure to the unadmitted evidence, the trial court told them that, "after the arrest of . . . Jeffrey[,] her purse was thoroughly searched by [the police]. It contained no bullets. The bullet that was located in the paper bag was placed there inadvertently. You are not to consider this in any way during deliberations." Juries are presumed to follow their instructions. *Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993); *State v. Dunlap*, 187 Ariz. 441, 930 P.2d 518 (App. 1996). Jeffrey has not established that the jurors failed to follow this instruction. Because the trial court gave a clear instruction to ignore the bullet, based on a stipulation to which Jeffrey expressly agreed, we conclude the trial court did not abuse its discretion in denying Jeffrey's motion for a mistrial. *See Chaney*.

¶19        Affirmed.


_____
                    M. JAN FLÓREZ, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge


_____

9

JOHN PELANDER, Judge