214 P.3d 1037

**The STATE of Arizona, Appellee,**

v.

**Fabian Alexander McKENNA, Appellant.**

**No. 2 CA–CR 2008–0104.**

Court of Appeals of Arizona, Division 2, Department A.

Sept. 4, 2009.

Terry Goddard, Arizona Attorney General By Kent E. Cattani, Joseph L. Parkhurst, and Laura P. Chiasson. Tucson, Attorneys for Appellee.

Robert J. Hirsh, Pima County Public Defender By David J. Euchner and Rose Weston, Tucson, Attorneys for Appellant.

## OPINION

ESPINOSA, Presiding Judge.

¶1 After a jury trial, appellant Fabian McKenna was convicted of theft of a means of transportation and first-degree felony murder. He was sentenced to a term of natural life in prison for the murder conviction and to a consecutive, 11.25–year term for the theft. He appeals his convictions and sentences on a number of grounds. For the reasons set forth below, we affirm.

### Factual and Procedural Background

■ ¶2 We view the facts in the light most favorable to upholding the convictions. *State v. McCurdy*, 216 Ariz. 567, ¶2, 169 P.3d 931, 934 (App.2007). In March 2007, McKenna went to the home of J. and his wife, C., around 11:00 p.m. Wearing a bandana over his face and carrying a gun, he entered an enclosed storage area and pro-

ceeded to the home's sliding-glass back door. J. and C. were preparing for bed when they heard a loud noise outside the kitchen. On entering the kitchen, they saw McKenna standing on the other side of the glass door. He tapped on the glass with the gun and motioned for them to open the door.

¶3 J. immediately began yelling at McKenna to leave, and C. went to another room to call 911. With the phone in hand, C. returned to the kitchen, where she saw McKenna continue to hit the door while her husband shouted at him. McKenna then raised the gun towards the couple, and J. told C. to run. As she ran down the hall, she heard a shot. She then heard J. beg, "[P]lease don't kill me," and heard a second shot. C. returned to the room and saw J. fall to the floor, gasping for air. McKenna was gone. J. died before emergency personnel arrived.

¶4 As he fled, McKenna left a trail of blood from the back door to the driveway. He was arrested three weeks later, after police matched his DNA[1] to the blood left at the crime scene. He was charged with first-degree murder and, having fled the murder scene in a vehicle he had stolen earlier that day, theft of a means of transportation. The state sought a felony murder conviction based on its theory that McKenna killed J. in the course of either a burglary or attempted burglary or an armed robbery or attempted armed robbery. McKenna was found guilty, convicted, and sentenced as outlined above and this appeal followed.

### Discussion

**Sufficiency of the Evidence**

■ ¶5 McKenna contends his conviction for felony murder must be reversed because it was supported by insufficient evidence. In reviewing evidence presented at trial to determine whether substantial evidence supported the jury's verdict, we view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against McKenna.[2] *See State v.*

---

1. Deoxyribonucleic acid.

2. McKenna notes the state's witnesses gave inconsistent testimony at trial. But it is the prov-

*Stroud,* 209 Ariz. 410, ¶ 6, 103 P.3d 912, 913–14 (2005). "A judgment of acquittal is appropriate when 'no substantial evidence [exists] to warrant a conviction.'" *State v. Nunez,* 167 Ariz. 272, 278, 806 P.2d 861, 867 (1991), *quoting State v. Clabourne,* 142 Ariz. 335, 345, 690 P.2d 54, 64 (1984) (alteration in *Nunez).* Evidence is "substantial" when it is more than a mere scintilla and is proof that reasonable persons could accept as convincing beyond a reasonable doubt. *Id.*

¶ 6 To find McKenna guilty of felony murder, the jury was required to find that he had committed one of the predicate felonies enumerated in A.R.S. § 13–1105(A)(2) and that, "in the course of and in furtherance of the offense or immediate flight from the offense, [he had] ... cause[d] the death of any person." On appeal, McKenna does not dispute that he caused J.'s death but argues the state presented insufficient evidence that he committed any of the alleged predicate felonies: burglary, attempted burglary, armed robbery, or attempted armed robbery.

*Burglary*

■ ¶ 7 McKenna's challenge to the sufficiency of the evidence to support a conviction for either first-degree burglary or attempted first-degree burglary lacks merit. First-degree burglary is a specific-intent crime, requiring the state to prove McKenna had "enter[ed] or remain[ed] unlawfully in or on a residential structure with the intent to commit any theft or felony therein" while knowingly possessing a deadly weapon. A.R.S. §§ 13–1507(A), 13–1508(A). McKenna does not dispute that he entered or unlawfully remained in or on a residential structure or that he did so while armed with a deadly weapon. But he claims he did not commit or intend to commit a theft while at the victims' home. As he acknowledges, however, a burglary conviction can be premised on the intent to commit any felony, not just a theft. *See* § 13–1507(A).

¶ 8 C.'s undisputed testimony at trial was that McKenna had stood outside the victims' glass door, wearing a mask, holding a gun, and gesturing to be let in. He had "raised his hand up with the gun" pointed toward J. and C., and she testified that she was "screaming and just frantic." Clearly, any reasonable jury would conclude that, by threatening the couple with the gun, McKenna not only demonstrated an intent to commit, but actually committed, aggravated assault against each of the victims by using a deadly weapon to place them in "reasonable apprehension of immediate physical injury." A.R.S. §§ 13–1203(A)(2), 13–1204(A)(2). The evidence was thus overwhelming that McKenna committed first-degree burglary with the intent to commit aggravated assault. Because the state presented sufficient evidence to support a conviction for burglary and McKenna does not dispute that he caused J.'s death in the course of this event, the evidence supports the jury's guilty verdict for felony murder on this basis.

*Armed Robbery*

■ ¶ 9 McKenna argues the state presented insufficient evidence to support a robbery conviction[3] and the trial court committed fundamental error by instructing the jury on robbery as well as burglary. He maintains that by instructing the jury on robbery, the court subjected him to the possibility of a guilty verdict for felony murder that was potentially based on an underlying crime for which there was insufficient evidence to support a guilty verdict. We will not uphold a felony murder conviction when the evidence is insufficient to support a verdict of guilty on the foundational felony. *See State v. Johnson,* 215 Ariz. 28, ¶ 25, 156 P.3d 445, 451 (App.2007) (overturning felony murder conviction in absence of evidence defendant had intended underlying burglary). However, a defendant is not entitled to a unanimous verdict on the precise manner in which a

ince of the jury, not the court of appeals, to resolve conflicting testimony. *See State ex rel. Hyder v. Superior Court,* 128 Ariz. 216, 224, 624 P.2d 1264, 1272 (1981).

**3.** At the close of the state's case, McKenna moved pursuant to Rule 20, Ariz. R.Crim. P., for

acquittal on the robbery charges. The trial court stated it did not "think robbery would be the more likely inference," nor that there was "any evidence whatsoever to indicate that a robbery was intended," but, nevertheless, denied the motion.

first-degree felony murder is committed. *State v. Lopez*, 163 Ariz. 108, 111–12, 786 P.2d 959, 962–63 (1990).

¶ 10 Assuming *arguendo* McKenna is correct that the state presented insufficient evidence of robbery, this case presents an issue not clearly governed by existing Arizona law. It is not akin to *Johnson*, where established case law required reversal because the state had failed to prove the one predicate felony alleged. 215 Ariz. 28, ¶ 25, 156 P.3d at 451. Nor is it clearly resolved by *Lopez*, which stands for the proposition that, when the state charges multiple predicate felonies in the alternative, the jury verdict need not be unanimous as to which one supported the defendant's felony murder conviction. 163 Ariz. at 111–12, 786 P.2d at 962–63. Neither party has cited any controlling authority, nor have we found any, establishing whether a felony murder conviction may be affirmed when the evidence may have been insufficient to support one of two or more alternatively charged predicate felonies.[4] Decisions from other jurisdictions considering this precise issue do not reflect a consensus. *Compare People v. Johnson*, 6 Cal.4th 1, 23 Cal. Rptr.2d 593, 859 P.2d 673, 695–96 (1993) (affirming felony murder conviction when one alternatively charged predicate felony not supported by sufficient evidence, but instructing jury on it constituted harmless error), *overruled in part on other grounds in People v. Rogers*, 39 Cal.4th 826, 48 Cal. Rptr.3d 1, 141 P.3d 135 (2006) *with State v. Maupin*, 63 Wash.App. 887, 822 P.2d 355,

358–59 (1992) (holding felony murder conviction must be reversed if insufficient evidence presented as to any one of alternatively charged predicate felonies).

¶ 11 Under the facts present here, we find that the California approach yields the most just and sensible result. McKenna's claim of insufficient evidence rests solely on his argument that the state did not sufficiently prove he had intended to take property from the victims. But he does not meaningfully dispute C.'s testimony about the factual events that occurred on the night of the shooting. As previously discussed, McKenna's actions gave rise to overwhelming evidence that he committed a burglary, one of the charged predicate offenses. His only dispute, therefore, is his claim that the state failed to prove that a further specific intent to rob the victims motivated the undisputed conduct that already constituted burglary, a felony sufficient to support a felony murder conviction. *See* § 13–1105(A)(2). However, whether the jury believed McKenna intended to take property from the victims is immaterial because the evidence unequivocally showed he killed J. in the course of committing a burglary; the alleged absence of proof of his further intent to rob the victims in no way affects his legal culpability for J.'s death. *Cf. Drew v. State*, 76 S.W.3d 436, 457 (Tex.App. 2002) (when there are alternate means of committing the same crime, jury need not agree on means). Rather, had the jury believed McKenna committed a robbery,[5] it

4. The state relies on *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and McKenna cites *State v. Detrich*, 178 Ariz. 380, 873 P.2d 1302 (1994), in support of their respective positions. Each case, however, is distinguishable and provides limited guidance on this issue. *Griffin* involved a multiple-defendant conspiracy charge, and the government alleged the conspiracy had two objects but could only connect Griffin to one of them. 502 U.S. at 47, 112 S.Ct. 466. The Supreme Court upheld a general guilty verdict on the conspiracy charge even though there was no way to determine the verdict did not rest on the object for which the government presented insufficient evidence. *Id.* at 48, 60, 112 S.Ct. 466. In *Detrich*, our supreme court reversed a felony murder conviction when the trial court had failed to give a requested jury instruction on unlawful imprisonment, a lesser-included offense of kidnapping, one of the alleged felonies underpinning the state's felony

murder theory, because the jury might have based its felony murder verdict on kidnapping and the defendant had been acquitted of the other charged felony. 178 Ariz. at 383–84, 873 P.2d at 1305–06. Neither case is directly on point as to this matter; *Griffin* was not about felony murder and *Detrich* involved no discussion of the implications of insufficient evidence.

5. We note circumstantial evidence arguably could support a finding McKenna also intended to commit robbery. *See State v. Rood*, 11 Ariz. App. 102, 104, 462 P.2d 399, 401 (1969) (criminal intent usually proven by circumstantial evidence). Undisputed testimony showed he came to the victims' home late at night, masked, and armed, *see State v. Clark*, 143 Ariz. 332, 334–35, 693 P.2d 987, 989–90 (App.1984) (jury could find defendant took step towards attempted armed robbery when he entered convenience store at 4:00 a.m., masked and carrying shotgun), after

would have merely ascribed to him the further intent to take property from the victims against whom he was already, undisputedly, committing a burglary. Therefore, we can say beyond a reasonable doubt that, even if the robbery charge was not supported by sufficient evidence and the trial court erred in instructing the jury on robbery, such error did not affect the felony murder verdict and was, therefore, harmless. *See State v. Bible,* 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (error harmless when court can say beyond reasonable doubt it did not affect verdict); *Johnson,* 23 Cal.Rptr.2d 593, 859 P.2d at 693 (applying harmless error analysis to alternatively charged predicates for felony murder).

### Cocaine Evidence

¶ 12 McKenna next argues the trial court committed reversible error in precluding evidence of J.'s "cocaine use, possession, and [drug] dealing." Before trial, the state had successfully moved to preclude evidence that J. had had cocaine or its metabolite in his body when he died, that cocaine residue had been found on his kitchen counter, and that a co-worker of J.'s suspected he may have been a drug dealer (collectively, "the cocaine evidence").

¶ 13 McKenna claims the cocaine evidence was relevant and necessary to his defense for several reasons. First, he contends evidence that J. was a drug dealer would have supported a defense that McKenna had gone to J.'s back door to obtain drugs rather than to commit a robbery or burglary, the predicate offenses for his felony murder conviction. In addition, McKenna argues that, if J. was "high on cocaine," J. may have been the initial aggressor in the altercation that McKenna contends led to the shooting. Thus, McKenna claims his theory, which he was effectively precluded from arguing, was that he "went to the house to buy drugs, knocked on the window, with no gun drawn and no bandana covering his face, and a fight

ensued from there." He also argues the cocaine evidence was relevant to C.'s "credibility, reliability, and ability to perceive and recall accurately." McKenna claims the error resulting from the preclusion of the cocaine evidence denied him his right to put on a complete defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article II, §§ 4, 13, and 24 of the Arizona Constitution.

¶ 14 Although the state moved to suppress the cocaine evidence as irrelevant under Rules 401 and 402, Ariz. R. Evid., the trial court apparently granted the motion pursuant to Rule 403, Ariz. R. Evid., which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[6] We review a trial court's decision to preclude evidence under Rule 403 for an abuse of discretion. *See State v. Dann,* 205 Ariz. 557, ¶ 36, 74 P.3d 231, 243 (2003). "Because '[t]he trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice,' [it] has broad discretion in this decision." *State v. Connor,* 215 Ariz. 553, ¶ 39, 161 P.3d 596, 607 (App.2007), *quoting State v. Harrison,* 195 Ariz. 28, ¶ 21, 985 P.2d 513, 518 (App.1998).

¶ 15 We cannot conclude the trial court erred in precluding the cocaine evidence. The undisputed testimony at trial was that McKenna was brandishing a gun and wearing a bandana over his face when he arrived at the victims' back door. C. offered the only evidence regarding McKenna's appearance, and she testified he was masked and holding a gun. This uncontradicted testimony undercuts any theory that McKenna had come to the back door without a mask and with no gun drawn. Significantly, McKenna offered

---

stealing an El Camino, a vehicle with a bed capable of carrying stolen property. *See, e.g., Wicker v. State,* 655 So.2d 1240, 1241–42 (Fla. Dist.Ct.App.1995) (defendant stole car to transport property taken from victim's home); *Brown v. State,* 546 N.E.2d 839, 840–41 (Ind.1989) (defendant stole victim's vehicle to transport property away from home following robbery); *State v.*

*Sales,* 255 S.W.3d 565, 567 (Mo.Ct.App.2008) (defendant stole minivan to transport items stolen from cabin).

6. I n making its ruling, the trial court discussed relevancy issues and then cited Rule 403.

no evidence to contradict C.'s testimony, nor did he impeach her credibility, ability to perceive, or memory with respect to this issue. *Cf. State v. Hummert*, 188 Ariz. 119, 126, 933 P.2d 1187, 1194 (1997) (trial court may properly preclude under Rule 403 "marginally relevant" evidence that different suspect may have committed offense).

¶ 16 To the extent McKenna now contends he would have presented additional evidence had the court not precluded the cocaine evidence, he should have made an offer of proof. *See* Ariz. R. Evid. 103(a)(2) (error may not be predicated on ruling excluding evidence unless substance of evidence shown by offer of proof or apparent from context); *State v. Towery*, 186 Ariz. 168, 179, 920 P.2d 290, 301 (1996) ("[The] proponent of the precluded evidence must ... make the offer of proof so that the reviewing court can determine whether the trial judge erred in precluding the evidence."); *cf. State v. Castro*, 163 Ariz. 465, 472, 788 P.2d 1216, 1223 (App.1989) (finding defendant's offer of proof "inadequate to relate the facts he wished to prove to his motive theory").

¶ 17 Likewise, McKenna made no offer of proof of what actual evidence he would have presented about whether J. was a drug dealer, the amount of cocaine in J.'s body, and what effects such an amount might have had on J. *See, e.g., State v. Dickens*, 187 Ariz. 1, 13–14, 926 P.2d 468, 480–81 (1996) (ruling affirmed based on "sparse record" because defendant made no specific offer of proof); *State v. Walton*, 159 Ariz. 571, 581–82, 769 P.2d 1017, 1027–28 (1989)[7] (affirming preclu-

sion of evidence where defendant failed to make offer of proof "beyond bare speculation" about how drug-use history could have impaired witness's memory and perception).[8]

¶ 18 Finally, McKenna failed to make any offer of proof regarding the issues about which he would have cross-examined C. had the cocaine evidence not been precluded, nor did he ask C. if she had been intoxicated or otherwise impaired on the night of the shooting.[9] *See* Ariz. R. Evid. 103(a)(2); *cf. State v. Soto–Fong*, 187 Ariz. 186, 196–98, 928 P.2d 610, 620–22 (1996) (defendant, precluded from impeaching witness on certain topics, made offer of proof and introduced exhibits providing impeachment evidence for appellate review); *Towery*, 186 Ariz. at 179, 920 P.2d at 301 (defendant's failure to make offer of proof prevents evaluation of whether trial judge "unfairly limited" cross-examination of witness). *See generally State v. Dickens*, 187 Ariz. 1, 14, 926 P.2d 468, 481 (1996) ("Although a defendant has a fundamental constitutional right to ... present a defense, the right is limited to the presentation of matters admissible under ordinary evidentiary rules...."). For all of these reasons, we affirm the trial court's ruling precluding the cocaine evidence.[10]

### Preclusion of Medical Records

¶ 19 McKenna also argues the trial court abused its discretion in precluding McKenna's own medical records. After requesting the records from a hospital one week before trial began, defense counsel re-

---

**7.** *Walton* was affirmed on other grounds in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), which was overruled by *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

**8.** To the extent McKenna claims the cocaine evidence was relevant to support the lesser-included offenses of second-degree murder and manslaughter, the state correctly points out that McKenna was convicted of felony murder, which has no lesser-included offenses. *See State v. Davolt*, 207 Ariz. 191, ¶ 92, 84 P.3d 456, 478 (2004). We agree with the state that, "[g]iven the jury's finding that [McKenna] was at [J.]'s home to commit a felony, whether or not he quarreled with [J.] or was provoked into killing him was irrelevant and provided no defense to felony murder." *See, e.g., State v. Bocharski*, 200 Ariz.

50, ¶ 41, 22 P.3d 43, 51–52 (2001) (any error in court's refusal to instruct on lesser-included offenses to first-degree, premeditated murder harmless because jury found defendant guilty of felony murder, which has no lesser-included offenses).

**9.** We note there is no indication in the record that C. had cocaine, or any other intoxicant, in her system.

**10.** Because we resolve the appeal on this ground, we need not address whether the cocaine evidence would have been admissible under Rule 404(b), Ariz. R. Evid. *See State v. Coghill*, 216 Ariz. 578, ¶ 13, 169 P.3d 942, 946 (App.2007) (explaining other-act evidence subject to admissibility under Rules 404(b) and 403).

ceived them on the second day of trial and attempted to introduce them on the third day of trial. Counsel explained to the court that she had not attempted to obtain the records earlier "because I didn't think [they were] really going to be relevant" but became "curious" as the trial date approached. The records indicated McKenna had sought treatment one day after the incident for a cut on his nose and had reported he had been hit in the face with a bottle. The state objected, alleging prejudice due to the untimely receipt of the records and on the further grounds they contained hearsay and were irrelevant.

¶ 20 In refusing to admit the medical records, the trial court ruled they did not "rise to the level of newly discovered evidence" and their disclosure on the third day of trial was prejudicial to the state. In addition, the court found that, even assuming the victim had inflicted the cut to McKenna's face, that evidence did not necessarily supply a defense to murder.

 ¶ 21 On appeal, McKenna argues these records were vital to his defense because they "supported [McKenna's] claim that there was a physical altercation that resulted in the shooting and that the killing was, therefore, manslaughter or second[-]degree murder at most." He also contends "[t]he records ... offered rebuttal evidence to the State's claim that [McKenna] had murdered a stranger without warning or provocation, to [C.]'s testimony about the sequence of events, and to the prosecutor's theory that only [McKenna had] handled the beer bottle." "We will not disturb a trial court's determination on the admissibility and relevance of evidence absent an abuse of discre-

tion." *See State v. Jeffrey*, 203 Ariz. 111, ¶ 13, 50 P.3d 861, 864 (App.2002).

¶ 22 Although the preclusion of evidence is a serious sanction, Rule 15.7 provides a trial court with discretion to preclude untimely evidence. Ariz. R.Crim. P. 15.7(a)(1). In addition, although "[p]recluding evidence is rarely an appropriate sanction," *Towery*, 186 Ariz. at 186, 920 P.2d at 308, "[g]enerally, there is no abuse of discretion if the defendant suffers no prejudice." *State v. Tucker*, 157 Ariz. 433, 439, 759 P.2d 579, 585 (1988).

¶ 23 We need not determine whether the trial court abused its discretion in precluding this evidence because McKenna was convicted of felony murder, for which there are no lesser-included offenses. *See State v. Davolt*, 207 Ariz. 191, ¶ 92, 84 P.3d 456, 478 (2004). Therefore, as the state correctly notes, "any evidence that tended to show that [McKenna] was guilty of a lesser degree of murder is completely irrelevant to his appeal of the felony murder conviction." *See State v. Nash*, 143 Ariz. 392, 400, 694 P.2d 222, 230 (1985) (holding "[b]ecause specific intent to commit murder is irrelevant to a felony-murder charge," no abuse of discretion in excluding expert testimony defendant "acted in self-defense caused by paranoid delusions"); *cf. State v. Bocharski*, 200 Ariz. 50, ¶ 41, 22 P.3d 43, 51–52 (2001) (any error in court's refusal to instruct on lesser-included offenses to first-degree murder harmless because jury found defendant guilty of felony murder, which has no lesser-included offenses).[11] Accordingly, we conclude that, even if the trial court erred in precluding this evidence, any such error was harmless. *See Jeffrey*, 203 Ariz. 111, ¶ 15, 50 P.3d at 865 ("Error is harmless when it can be said beyond a reasonable doubt that it did not affect the verdict.").[12]

---

**11.** Moreover, the mere fact McKenna sought treatment for a facial injury the day after he shot J. did not necessarily support a claim of provocation or justification as he suggests, in view of the unrefuted evidence that he had gone to J.'s home wearing a mask and brandishing a gun.

**12.** In his reply brief, McKenna contends the state's harmless error argument is "clearly mistaken" because the medical records were relevant to McKenna's defense to the predicate felonies of burglary and robbery. Specifically, he argues the state's "continued reliance on the 'masked gunman' theory of the case ... is mis-

placed ... because the jury may not have believed [C.]'s testimony and this Court cannot say beyond a reasonable doubt that the jury would have convicted [McKenna] of felony murder had the jury heard the evidence concerning [his] injury." We disagree. As set forth in the previous section, the evidence of McKenna's appearing, armed and masked, at the back door and of the apparently short period of time involved was undisputed at trial and would have remained uncontradicted even if the medical records had been admitted into evidence. *See Jeffrey*, 203 Ariz. 111, ¶ 15, 50 P.3d at 865.

## Prosecutorial Misconduct

¶ 24 McKenna next challenges the trial court's denial of his motion for a new trial, which was based on alleged prosecutorial misconduct during closing arguments. We review the court's denial of a motion for a new trial for an abuse of discretion. *State v. Hoskins*, 199 Ariz. 127, ¶ 52, 14 P.3d 997, 1012 (2000).

### Comments on McKenna's Beer Bottle Theory

¶ 25 McKenna first claims the prosecutor made improper comments concerning the broken beer bottle found outside J.'s back door and McKenna's theory that J. had hit him in the face with it, cutting his nose. At trial, the prosecutor stated there was "no evidence in this case at all" supporting McKenna's theory that "the victim ... attacked [McKenna] with a broken beer bottle."

¶ 26 McKenna argues "it was improper, prejudicial, and fundamentally unfair for the prosecutor to call jurors' attention to an inference that the broken beer bottle was the result of anything other than an injury to [McKenna's] face," when the prosecutor "fought to have the court preclude the medical evidence proving how [he] was injured and how the beer bottle came to be broken." Specifically, McKenna contends his precluded medical records "offered a reasonable explanation for the broken beer bottle and at least some support for [his] claim of an altercation." Therefore, McKenna argues, when the prosecutor said there was "no evidence in this case at all to support that's what happened" with the broken beer bottle nor "a single piece of testimony or evidence to suggest how it got there," the prosecutor intentionally made a false statement. In denying McKenna's motion for a new trial, the trial court found the prosecutor had only argued the evidence that was before the jury and had not commented on the precluded evidence.

¶ 27 As the state correctly notes, and as McKenna concedes, because McKenna did not object to the prosecutor's closing statements at trial, he has forfeited all but fundamental error review. *See State v.*

*Henderson*, 210 Ariz. 561, ¶¶ 19–20, 115 P.3d 601, 607 (2005); *State v. Cook*, 170 Ariz. 40, 51, 821 P.2d 731, 742 (1991) (" 'Opposing counsel must timely object to any erroneous or improper statements made during closing argument or waive his right to the objection, except for fundamental error.' "), *quoting State v. Smith*, 138 Ariz. 79, 83, 673 P.2d 17, 21 (1983); *State v. Mills*, 196 Ariz. 269, ¶ 15, 995 P.2d 705, 709 (App.1999) (defendant forfeited argument by first raising it in motion for new trial). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607. Fundamental error is " 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.' " *Id.* ¶ 19, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). "To obtain relief under the fundamental error standard of review, [McKenna] must first prove error." *Id.* ¶ 23.

¶ 28 We find no error here. On this record, the trial court could reasonably conclude the prosecutor merely argued the evidence that was before the jury and did not improperly comment on evidence that had been precluded. "Although counsel may not comment on matters not in evidence before the jury, they may argue reasonable inferences from the evidence presented at trial." *State v. Blackman*, 201 Ariz. 527, ¶ 71, 38 P.3d 1192, 1209 (App.2002); *see also State v. Sarullo*, 219 Ariz. 431, ¶ 24, 199 P.3d 686, 692–93 (App.2008) (no prosecutorial misconduct where prosecutor commented on defendant's failure to present evidence supporting his theory of case despite court's previous denial of defendant's attempt to obtain similar evidence).

### Comments on McKenna's Silence

¶ 29 McKenna also contends the prosecutor improperly commented on his failure to testify. "The Fifth Amendment of the United States Constitution, article [II, § 10], of the Arizona Constitution, and A.R.S. [§ ] 13–117(B) prohibit any comment, direct or

indirect, by a prosecutor about the failure of a defendant to testify." *State v. Rutledge,* 205 Ariz. 7, ¶ 26, 66 P.3d 50, 55 (2003).[13]

¶ 30 During his closing argument, McKenna's counsel pointed out that the state could not prove McKenna's motive "because we don't know the answer. There is no answer. There is no motive. There is no premeditation." Apparently in response, the prosecutor made the following statements in his rebuttal closing argument:

> Prosecutor: [W]ho is the one person that could have given this information to the police? ... Who is the one person who could have told the police why this happened? The defendant, Fabian McKenna. He is the one who did it.
>
> Defense Counsel: Objection, Your Honor.
>
> Court: Sustained.
>
> Prosecutor: The defendant told the police he was never there. That was his statement to the police, and now the defense wants you to hold it against the State because the defendant said he was never there. That's what they are asking you to do. They are asking you to give him a break because he killed one witness who doesn't know why he was there and he terrified another witness because she was running out of the room trying to get the police and who also wouldn't know why he was there.

¶ 31 "Comments by a prosecutor about a defendant's failure to testify may violate the defendant's right to be free from compelled self-incrimination." *Blackman,* 201 Ariz. 527, ¶ 74, 38 P.3d at 1209. "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *Rutledge,* 205 Ariz. 7, ¶ 33, 66 P.3d at 56. "We must look to the entire record and to the totality of the circumstances." *Id.*

¶ 32 We conclude the prosecutor's statements did not constitute an impermissible comment on McKenna's failure to testify for several reasons. At the outset, the prosecutor did not explicitly refer to McKenna's failure to testify, but instead directed his remarks specifically to McKenna's statements to police. *See, e.g., Blackman,* 201 Ariz. 527, ¶ 75, 38 P.3d at 1210 (noting prosecutor "did not refer directly" to defendant's failure to testify); *cf. State v. Decello,* 113 Ariz. 255, 258, 550 P.2d 633, 636 (1976) (fundamental error where prosecutor said " 'no one, no one, no one got up on this stand and testified to you contrary to what was testified to you by the witnesses' "); *State v. Rhodes,* 110 Ariz. 237, 238, 517 P.2d 507, 508 (1973) (prosecutor's "direct comment on the defendant's failure to take the witness stand" constituted fundamental error).

¶ 33 Instead, the prosecutor's comments were more akin to those in *Rutledge,* where the prosecutor said, " 'Now keep in mind, folks, that this defendant in this interview with Detective Lewis ... there are some very important things that he says in this interview and that he doesn't say.' " 205 Ariz. 7, ¶ 37, 66 P.3d at 57. Our supreme court concluded that, "taken in context, the jury would not naturally and necessarily perceive the prosecutor's remark as a comment on [the defendant]'s failure to testify," when the prosecutor "specifically referred to the videotaped interview and did not refer" to the defendant's decision not to testify. *Id.* ¶ 38. Likewise, the prosecutor's remarks here, viewed in context, were directed at McKenna's statements to the police officers and not his failure to testify at trial. Accordingly, as in *Rutledge,* the jury would not "naturally and necessarily perceive" the prosecutor's statements as a comment on McKenna's failure to testify. *See id.*

---

13. To the extent McKenna suggests the prosecutor's comments also implicated his right not to speak to police in addition to his right not to testify at trial, he has failed to adequately brief this issue, and we therefore do not address it. *See* Ariz. R.Crim. P. 31.13(c)(vi) (appellant's brief must contain argument with citations to authori- ty); *State v. Moody,* 208 Ariz. 424, n. 9, 94 P.3d 1119, 1147 n. 9 (2004) (" '[O]pening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised.' "), *quoting State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989).

¶ 34 In addition, "the trial court, which is in the best position to assess an argument's effect on the jury, concluded that the argument did not direct the jurors' attention to [McKenna]'s failure to testify." *Blackman,* 201 Ariz. 527, ¶ 76, 38 P.3d at 1210. Here, the court explained it had sustained the objection to the prosecutor's comment because the prosecutor "was approaching a comment on the defendant's right not to testify," but had concluded after the prosecutor "finished his sentence and went on," that there was no impermissible comment on McKenna's failure to testify. *See, e.g., Cook,* 170 Ariz. at 50–51, 821 P.2d at 741–42 (finding no fundamental error implicating defendant's right not to testify after reviewing context of prosecutor's statement that, " '[t]here were only four people there at that [sic] time of the deaths; two of them are dead; one is in prison; one is the Defendant.' "). We therefore find no reversible error based on the prosecutor's conduct or the court's denial of McKenna's motion for a new trial.

¶ 35 Finally, even if the prosecutor's statements had been improper comments on McKenna's failure to testify, we would find such error harmless. "Prosecutorial misconduct is harmless error if we can find beyond a reasonable doubt that it did not contribute to or affect the verdict." *State v. Hughes,* 193 Ariz. 72, ¶ 32, 969 P.2d 1184, 1192 (1998); *see also Rutledge,* 205 Ariz. 7, ¶ 32, 66 P.3d at 56 (providing "improper comment on a defendant's failure to testify can be harmless error"); *State v. Trostle,* 191 Ariz. 4, 16, 951 P.2d 869, 881 (1997) (prosecutor's impermissible statement on defendant's failure to testify harmless error beyond reasonable doubt; "we cannot say it contributed to the jury's verdict in view of the overwhelming evidence of guilt and the context within which it was made").

¶ 36 As the state points out, "[t]he evidence was uncontradicted that [McKenna]

showed up at [J.]'s back door with his face covered and a gun in his hand" and that McKenna, through his counsel, admitted killing J. *See, e.g., State v. Guerra,* 161 Ariz. 289, 297, 778 P.2d 1185, 1193 (1989) (deeming prosecutor's comments on defendant's silence harmless because defendant admitted at trial having killed victim; "we can say beyond a reasonable doubt that the error did not contribute to the verdict"); *cf. Rhodes,* 110 Ariz. at 237–38, 517 P.2d at 507–08 (concluding prosecutor's comment not harmless beyond reasonable doubt where evidence circumstantial "with any prejudicial comment likely to tip the scales in favor of the State"). In addition, the prosecutor's remarks here were in response to the defense argument that the state had failed to prove a motive for the shooting. This evidence was relevant to the issue of whether the shooting was second-degree murder instead of premeditated, first-degree murder-specifically, whether an argument had led to the shooting. However, because McKenna was acquitted of premeditated murder, this issue is irrelevant.[14] *See State v. Herrera,* 174 Ariz. 387, 396, 850 P.2d 100, 109 (1993) (evidence relating to identity of shooter irrelevant when defendant convicted of felony murder and acquitted of premeditated murder). Accordingly, even assuming the prosecutor's statements had been improper comment on McKenna's failure to testify, we would find that any error resulting from those statements was harmless.[15]

### Disposition

¶ 37 For the foregoing reasons, we affirm McKenna's convictions and sentences.

CONCURRING: JOSEPH W. HOWARD, Chief Judge and JOHN PELANDER, Judge.

---

**14.** Although McKenna argues the jury's failure to find him guilty of first-degree murder shows "the jury did not accept the State's case entirely at face value," there could have been other reasons the jury did not find him guilty of premeditated murder. *See State v. Zakhar,* 105 Ariz. 31, 32, 459 P.2d 83, 84 (1969) (explaining juries sometimes compromise or exercise leniency when reaching their verdicts); *State v. Washington,* 132

Ariz. 429, 433, 646 P.2d 314, 318 (App.1982) (courts will not speculate on reasons for jury's verdict).

**15.** We need not reach McKenna's argument concerning a manslaughter jury instruction because he concedes this issue would not result in reversible error and would only be relevant if we were to order a new trial on other grounds.