NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

FERNANDO JAIME, *Appellant.*

No. 1 CA-CR 19-0580
FILED 8-5-2021

---

Appeal from the Superior Court in Maricopa County
No. CR 2016-115005-001
Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Ortega & Ortega PLLC, Phoenix
By Alane M. Ortega
*Counsel for Appellant*

Fernando Jaime, Florence
*Appellant*

-----

**MEMORANDUM DECISION**

-----

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

-----

**B R O W N**, Judge:

**¶1**　　　This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. Defendant Fernando Jaime was given the opportunity to file a supplemental brief and has done so. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the convictions and resolving all reasonable inferences against Jaime, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

**BACKGROUND**

**¶2**　　　The charges against Jaime arise from events surrounding R.C.'s death. On March 30, 2016, Jaime waited outside of R.C.'s mother's home until R.C. arrived. When R.C. exited his car, Jaime approached and pointed a gun at R.C.'s head. Jaime pointed a second gun at R.C.'s family members located nearby, threatening to shoot them if anyone called 911. Jaime then directed a relative to remove a gun from R.C.'s waistband so he would be unarmed. Jaime made R.C. get into the driver's seat of his car. Jaime got into the rear passenger seat, still pointing the gun at R.C.'s head, and as they drove away R.C.'s family called the police.

**¶3**　　　Police officers quickly located R.C.'s car and followed until it stopped in front of Jaime's mother's home. The officers began to conduct a high-risk stop and started giving commands. Gunshots were fired out of the back window of the car, and the officers returned fire. Jaime exited the car and ran away. When the shooting ended, police approached the vehicle and found the person in the front seat, R.C., had been shot.

**¶4**　　　After running from the scene, Jaime approached a stranger, W.C., outside his apartment and asked if he could hide out inside. W.C. refused, so Jaime hit him with a gun and entered the apartment.. Once inside, Jaime forced W.C. and three other occupants of the apartment into

a back room at gunpoint. As they waited, Jaime admitted to them he had shot his friend during a police shootout. After several hours, Jaime agreed the occupants could leave to get him a hotel room, and as the group left the apartment, police were waiting outside to arrest Jaime.

¶5 The medical examiner concluded that R.C. had sustained a fatal gunshot wound to the back of his head, as well as a second wound to his right hand. He posited the most likely scenario was that R.C. put up his hand to cover his head before the gun was fired. His hand also had gunpowder stippling (tiny red dots on the skin around the entrance wound), suggesting he was within a few feet of the barrel of the gun when it fired and the gunshot likely came from inside the car. A witness had seen Jaime seated in the rear passenger seat, and police observed the gunshots coming from that area of the car. In addition, blood spatter analysis suggested the fatal shots to R.C. came from the rear passenger seat. In processing the scene, police found .9mm cartridges and casings inside the car, matching one of Jaime's guns and not the guns fired by police.

¶6 The State charged Jaime as follows: (1) one count of first-degree murder (premeditated and felony murder) in violation of A.R.S. § 13-1105, (2) four counts of kidnapping in violation of A.R.S. § 13-1304, (3) 11 counts of aggravated assault in violation of A.R.S. § 13-1204, (4) one count of drive-by shooting in violation of A.R.S. § 13-1209, (5) one count of first-degree burglary in violation of A.R.S. § 13-1508, and (6) two counts of misconduct involving weapons in violation of A.R.S. § 13-3102.

¶7 Jaime pled guilty to the misconduct involving weapons charges. After a 12-day jury trial, the jury found Jaime guilty of 17 of the remaining 18 counts, acquitting him of one count of aggravated assault. The trial court sentenced him to natural life in prison on the first-degree murder count and up to 15.75 years in prison for the remaining counts, all of which run concurrently with each other except for the 11.25-year prison sentence on Count 3. The court awarded Jaime presentence incarceration credit of 1,296 days on all counts except first-degree murder. Jaime timely appealed.

## DISCSUSSION

### A. Trial Strategy

¶8 In his supplemental brief, Jaime first argues he was prejudiced by defense counsel's failure to produce an expert witness to opine about the likelihood of R.C. being shot by police officers rather than Jaime, after defense counsel told the jury in opening statements the expert

3

would be testifying at trial. Jaime also argues defense counsel failed to present a voluntary intoxication defense. Both of these issues involve questions of trial strategy, which are reviewable only as ineffective assistance of counsel claims, and thus they are irrelevant here because such claims must be brought in post-conviction relief proceedings. *See State v. Atwood*, 171 Ariz. 576, 599 (1992), *disapproved of on other grounds*, *State v. Nordstrom*, 200 Ariz. 229, 241, ¶ 25 (2001); *see also State v. Gerlaugh*, 144 Ariz. 449, 455, 461 (1985) (analyzing attorney's "failure to argue for petitioner's alleged intoxication" as trial strategy); *State v. Meeker*, 143 Ariz. 256, 262 (1984) (attorney's decision "as to what witnesses should be called . . . is a tactical, strategic decision").

**¶9** Jaime asserts that because defense counsel failed to call the expert witness to testify at trial, Jaime felt compelled to testify even though he had not planned to do so given his prior felony convictions. But the record shows the trial court carefully questioned Jaime to ensure he was making the decision to testify voluntarily, he stated he understood his right not to testify, and he acknowledged the jury would be apprised of the prior convictions if he took the stand.

## B. Disclosure of Evidence

**¶10** Jaime argues that several pieces of evidence were not made available to the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* prohibits "the suppression by the prosecution of evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment . . . ." *Id.* at 87. The record does not support Jaime's argument.

**¶11** First, Jaime contends that a gunshot residue ("GSR") swab of his hands was never made available to the defense for analysis. Detective Darby testified that the State swabbed Jaime's hands, but Darby did not analyze the swab because GSR is considered an outdated science. He also explained the swab was available for testing by either the State or the defense. Jaime claims that defense counsel stated in closing arguments that the GSR sample was never made available for analysis. However, defense counsel never stated he lacked access to the GSR swab.

**¶12** Second, Jaime argues the defense never received analysis of his blood sample. The record, however, shows the State disclosed the toxicology report to defense counsel, who acknowledged receipt of the report on February 2, 2017.

**¶13** Third, Jaime argues that Officer Flores's body camera footage was unfairly edited, and the defense did not receive the entire video. Flores

testified he failed to turn his camera on until after the first volley of shots but before the second, and no evidence exists to suggest the video was longer than what was presented to the jury.

### C.    Evidentiary Rulings

**¶14**      In describing R.C.'s kidnapping, C.C. talked about Jaime's demeanor at the time and noted that Jaime had mentioned "being in the Illuminati." Jaime argues this reference was an improper attempt to use religion to discredit his defense, and he claims that if jurors did not know what "the Illuminati" means they likely went home and searched it on the internet. Jaime also contends C.C.'s mention of "the Illuminati" violated Arizona Rule of Evidence 610, which states that "[e]vidence of a witness's religious beliefs . . . is not admissible to attack . . . the witness's credibility." Because Jaime failed to object to the C.C.'s comment, he bears the burden of establishing fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 150, ¶ 12 (2018).

**¶15**      "Juries are presumed to follow their instructions," including the admonition not to do outside research. *State v. Jeffrey*, 203 Ariz. 111, 115, ¶ 18 (App. 2002) (citation omitted). And Jaime has not offered any support for his assertion that the jury failed to follow that instruction. Although the witness's unsolicited comment about "the Illuminati" was arguably improper, considering the record as a whole, the witness's brief mention of that term was "merely [an] isolated reference[] and not significant in relation to the trial proceedings in their entirety." *State v. Stone*, 151 Ariz. 455, 459 (App. 1986). The error was neither fundamental nor prejudicial.

**¶16**      Jaime also argues the trial court erred in overruling defense counsel's objections during Detective Darby's testimony. We review evidentiary rulings for an abuse of discretion. *State v. Blakely*, 204 Ariz. 429, 437, ¶ 34 (2003).

**¶17**      The prosecutor asked Darby whether anything had been done to R.C.'s hands during the period between his removal from the car on March 30 and his autopsy on April 4. Defense counsel objected as to speculation, but the trial court overruled him, allowing Darby to answer "yes" or "no." Lay witnesses may testify to matters within their personal knowledge, and the court did not abuse its discretion in allowing Darby to testify to facts within his personal knowledge as the case detective. Ariz. R. Evid. 602.

**¶18**      A short time later, the prosecutor referenced an exhibit showing the palm of R.C.'s hand and Darby's explanation that there was a

"blood transfer," and asked Darby, "How do you come to that statement?" Defense counsel objected as to foundation. The court overruled the objection, explaining that defense counsel failed to specify what was missing and the court interpreted the question as merely asking Darby how he came to his conclusion. We agree that the prosecutor was properly seeking the evidentiary basis for Darby's statement, and thus we find no abuse of discretion.

### D.     Felony Murder

**¶19**          Finally, Jaime argues there was insufficient evidence for his conviction of first-degree felony murder. The evidence, however, shows Jaime committed two felonies at the time R.C. was killed: kidnapping and drive-by shooting. And even if the evidence was insufficient, Jaime cannot show he was prejudiced because the jury also unanimously found Jaime guilty of first-degree premeditated murder.

**¶20**          After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Jaime was present and represented by counsel at all critical stages of the proceedings against him. The evidence presented supports the convictions, and the sentence imposed falls within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Jaime's constitutional and statutory rights. We note, however, that at the sentencing hearing the trial court improperly referenced Jaime's failure to show remorse and admit responsibility. *See State v. Trujillo*, 227 Ariz. 314, 317–18, ¶¶ 12, 15 (App. 2011). Because the court imposed the mandatory sentence on the first-degree murder conviction, and presumptive sentences on all the other counts, we are convinced that no fundamental, prejudicial error occurred.

**CONCLUSION**

**¶21**        We affirm Jaime's convictions and sentences.  Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, her obligations are fulfilled once she informs Jaime of the outcome of this appeal and his future options.  *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).  Jaime has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA

7